## Floyd *against* Bovard.

| 6 WS 75 |
| 30 SC ²155 |
| 30 SC ¹500 |

A consignee, in whose hands goods are placed to be sold, may set up the consignor's want of title as a defence to an action for the price of them.

The cross-examination of a witness must be confined to the subject-matter about which he was called to testify; if he be acquainted with other facts material to the issue, he may be recalled by the other party, who thereby makes him his own witness, and is subject to all the rules which govern his examination.

If a witness be called and examined by the plaintiff, he may, at any subsequent stage of the trial, be called and examined by the defendant, as to any fact within his knowledge material to the defence, although he may be directly interested in defeating the plaintiff's recovery.

ERROR to the District Court of *Allegheny* county.

George Bovard against John Floyd & Company. This was an action of *assumpsit,* brought by the plaintiff to recover the proceeds of a quantity of pig-iron sold by the defendants as commission merchants.

Robert J. M'Gowan, an iron-master in failing circumstances, had assigned a quantity of pig-metal to David M'Junkin, one of his creditors; and had subsequently assigned to Alfred Nesmith whatever should remain of it after satisfaction of M'Junkin's debt. The plaintiff, who was also a creditor of M'Gowan, applied for iron to pay his debt, but it was refused him; he, however, assisted M'Junkin to take away iron enough to satisfy his debt, and sent the surplus to the defendants to be sold on his account. The iron was sold, and credited on the books of the defendants to Bovard. This action having been brought to recover the nett proceeds of sale, Nesmith interposed, and set up Bovard's want of title to the iron as a defence to the action for the price. The court below was of opinion that the defence was not available, and that the plaintiff was entitled to recover.

On the trial the plaintiff called and examined George Floyd as a witness. After the plaintiff had concluded his evidence, the defendant called George Floyd, and proposed to examine him about other facts within his knowledge, material to the defence. The plaintiff objected, and the court sustained the objection, and sealed a bill of exception at the instance of the defendants.

*Miller* and *M'Candless,* for plaintiffs in error, on the first point, cited 2 *Stor. Ag.* 207; 9 *Bing.* 382; 6 *Whart.* 418; 3 *M. & S.* 574.

*Dunlop,* contra, cited *Stor. Eq.* 122, 240, 296; 33 *Eng. Com. Law* 135; 5 *Mad. Chan.* 36; 5 *Eng. Ch. Rep.* 345.

[Floyd v. Bovard.]

The opinion of the Court was delivered by

GIBSON, C. J.—The facts appear to be, that M'Gowan, an iron-master in failing circumstances, had assigned a quantity of pig-metal to M'Junkin, his creditor; and had subsequently assigned to Nesmith whatever should remain of it after satisfaction of M'Junkin's debt. Bovard, the plaintiff, who was likewise a creditor and M'Gowan's manager, applied for metal also; but being refused, assisted M'Junkin to take away enough to satisfy his debt, and sent the surplus to the defendant to be sold on his account. Nesmith now intervenes, and claims the proceeds under the assignment to him; and the question is, whether Bovard's want of title to the metal, is want of title to the price of it. To state such a case is to decide it. Besides, the very principle was ruled in *King* v. *Richards,* (6 *Whart.* 418), in which the bailee of goods surreptitiously procured by the bailor, was allowed to set up the bailor's want of title to the goods as a defence to an action for them. Then if the defendants could have set up the plaintiff's want of title to an action for the metal, they can equally set it up to an action for the substitute. It is immaterial that the plaintiff took the metal before the assignment to Nesmith. His possession could not give him the property, or hinder it from passing to another; and to show that he had no title to the metal, is to show that he has no title to the proceeds of it.

Unless the testimony of Floyd was offered to contradict the deposition of Josiah M'Junkin, which had been read on the other side—a matter that does not appear by the bill of exceptions—it was erroneously rejected. By having himself called him as a witness, the plaintiff had removed the objection which lay to him as a party, in the first instance. It is true, as was ruled in *Ellmaker* v. *Buckley,* (16 *Serg. & Rawle* 72), that the defendants could not cross-examine him as the plaintiff's witness; and that they had no choice but to call him themselves. It is true, also, as has been said, (1 *Stark. Ev.* 162), that the same witness may know distinct parts of the transaction, the one making for the plaintiff and the other for the defendant; and that there is no good reason, when each calls him in turn, why each should not cross-examine him in turn, or be prevented from putting leading questions. The difficulty is to find a reason for those English decisions which hold the parties to a different course, and allow the witness to be cross-examined to every transaction within his knowledge in the hands of the party who is first compelled to call him. This would seem to be foreign to the end of a cross-examination, which is not to give the party an advantage in the manner of introducing the facts of his case, but to test the credibility of the witness as to what he has testified; for, it is said, that he shall not be cross-examined to collateral facts, or to matters unconnected with the subject of inquiry, because it would lead to complication and prolixity; (1 *Stark. Ev.* 154); and, I may add, that to reward a party with the privi-

[Floyd v. Bovard.]

lege of putting leading questions for bringing forward a branch of his case out of its order, would reward him for throwing the cause into confusion. Where the testimony of a witness is required to establish a fact which is part of the plaintiff's case, and also another fact which is part of the defence, it is a dictate of justice that no advantage be given to either party in the manner of eliciting it. But an advantage is, in truth, given, and for no adequate reason, when a party is allowed to bring out his part of the case by cross-examination, merely because the opposite party had been compelled to call the witness in the first instance. In *Rex* v. *Brooke*, (2 *Stark. Ca.* 473), and *Phillips* v. *Eamer*, (1 *Esp. Ca.* 357), the witness was allowed to be cross-examined because he had been merely sworn, though he even had not been examined. The object could not have been to sift what he had said, for he had said nothing; or to test his credibility, for it had no connection with anything that had transpired in the cause. There ought to be better authority for such a course, than one or two hasty decisions of a single Judge in the course of a trial. But the authority of these Nisi Prius cases is shaken to its centre by *Reed* v. *James*, (1 *Stark. Ca.* 132); *Davis* v. *Dale*, (1 *Moody & Mal.* 514), and *Simpson* v. *Smith*, (1 *Stark. Ev.* 162, note (*n*).). It would be better to say that each party should call the witness to serve his turn, and make him his own for the time being, than to entangle the justice of the case in those distinctions with which the English Judges have surrounded it. A plaintiff may be compelled to call the defendant's principal witness to some matter of formal proof; and it is easy to see that the justice of the case would not be promoted by allowing the defendant, for that reason, to break in on the plaintiff's order of proof, by introducing his defence, and eliciting the testimony in support of it by leading questions. But the question before us is not involved in these difficulties. The objection was not to the manner of examination, but to examination in any manner. By the English practice, he might have been examined to the new matter, when called by the other side, and why not when called in a subsequent stage of the cause? The plaintiff himself had called him to prove a part of his case, the witness consenting to be sworn; and had not this been done, he certainly would have been incompetent to testify for his co-defendant. And why? Because his interest raised a presumption unfavourable to his credibility, which would not have been rebutted. But did not the plaintiff rebut it when he produced him as a witness worthy of credit, and had the benefit of his testimony? Or did he assert no more than that he was worthy of credit only when he testified against his own interest? The man who is honest enough to declare the whole truth, when it makes against him, will be honest enough to declare no more than the truth in his own favour. It would give a party an unjust advantage to let him pick out particular parts of a witness's testimony and reject the rest. But the

[Floyd v. Bovard.]

matter does not rest on principle alone; for it is a familiar rule that a party cannot discredit his own witness, or show his incompetency. If the objection, then, was made to the competency of the witness, and not to the substance of his testimony, he was erroneously rejected. The cause goes back on another ground; and, if there was error in this respect, it can be avoided at the trial.

Judgment reversed, and a *venire de novo* awarded.