[For subsequent proceedings in this litigation, see Cases Nos. 12,058 and 12,057.]

---

## Case No. 12,060.

### ROSENFIELD v. EXPRESS CO.

[1 Woods, 131.] [1]

Circuit Court, D. Louisiana. Nov. Term, 1871.

CARRIERS —ACTION FOR NONDELIVERY—TITLE ESTABLISHED IN THIRD PARTY—NOMINAL DAMAGES.

1. A common carrier to whom goods are delivered for carriage cannot of his own motion set up title in another as a reason for not delivering the goods to the shipper or his consignee.

[Cited in The Director, 26 Fed. 712.]

[Cited in Wells v. American Exp. Co., 55 Wis. 32, 11 N. W. 537, and 12 N. W. 441.]

2. But when the carrier, upon demand made or suit brought by the real owner, delivers the goods to him, such delivery will be a defense to an action brought by the shipper or his consignee for the value of the goods.

[Cited in brief in Schmidt v. The Pennsylvania, Case No. 12,465.]

3. When goods have been delivered by a carrier to a person other than the shipper or his consignee, not entitled to them, and the latter delivers the goods to the shipper or consignee, or pays him their value, in a suit against the carrier for the nondelivery of the goods, the shipper or consignee can only recover nominal damages.

[Cited in Jellett v. St. Paul, M. & M. Ry. Co., 30 Minn. 268, 270, 15 N. W. 237.]

The parties having filed a written stipulation waiving a jury, the cause was submitted

---

[1] [Reported by Hon. William B. Woods. Circuit Judge, and here reprinted by permission.]

to the court upon the issues of fact as well as of law.

C. Roselius, for plaintiff.

A. de B. Hughes, for defendant.

WOODS, Circuit Judge. The petition alleges that on the first day of September, 1865, at Alleytown, in the state of Texas, the plaintiff, being the owner of certain packages and cases of wool and cotton cards, intrusted the same to the defendant, to be transported to the city of New Orleans, there to be delivered to plaintiff or his order. That on the 4th of September, 1865, at Houston, Texas, the plaintiff, being the owner of twenty-two other boxes of cotton cards, intrusted them through his agent, A. Cramer, to the defendant to be transported to New Orleans, and there delivered to the order of said Cramer. That the defendant, notwithstanding its obligation to deliver said packages and cases to the plaintiff, has, although demand therefor has been made by plaintiff, neglected and refused to deliver the same to him, to his damage in the sum of twenty thousand, seven hundred and twenty dollars, for which amount, with interest and costs, the plaintiff demands payment. The answer admits all the averments of the petition, except as to the value of the goods shipped, and sets up by way of defense: (1) That the defendant transported the goods duly to said city of New Orleans, and there delivered them to one G. Lewis, who was the owner of the same, and who had full authority to receive them. (2) That said goods were only worth $4,500.

On the trial of the cause to maintain the issue on its part, defendant offered evidence tending to show that Gustave Lewis and L. Cowan were the owners of said goods, and that the same were delivered to said Lewis, and that he had authority to receive the same; but the defendant did not offer to prove that the goods were delivered to Lewis upon the order of the plaintiff, or by his authority. The evidence so offered was objected to by the plaintiff, and the question of its admissibility was argued on both sides with ability and research. The rule of law is claimed by the defendant to be this: If property committed to a common carrier has been delivered by it to the rightful owner who is other than the consignee, upon a suit brought by the latter, the title of the property may be inquired into, and the carrier is not concluded by the receipt or a bill of lading. On the other hand, it is asserted by plaintiff that to contend that the common carrier can dispute the title of the party who employs him, being pro hac vice, the agent of the shipper, is to assume a ground altogether at variance with his confidential position and duties toward his principal, subversive of his trust, destructive of good faith and opposed to the policy and reason of the law, which protects and advances the interest of the employee.

After an examination of all the authorities cited on either side, I am satisfied that the rule upon which the question is based, is this: In general, the carrier is not permitted to dispute the title of the person who delivers goods to him, and on his own motion, set up an adverse title in another. But if an adverse claim has been set up by the real owner, and suit either brought or threatened, or even demand made for the goods, and they have been delivered to him, the carrier may show these facts, and they will constitute a good defense to an action by the consignor. In Wilson v. Anderton, 1 Barn. & Adol. 450, Littledale, J., says: "If the suitor brought an action against the defendant as bailee, the latter might show that on being threatened by an action by a person who had title to the goods, he (the bailee) had delivered them." In King v. Richards, 6 Whart. 418, the court uses this language: "It may be correct enough to hold that, when the real owner does not appear and assert his right, the carrier or bailee shall not be permitted, of his own mere motion, to set up as a defense against his bailor such right for him; but it would be repugnant to every principle of honesty to say, that after the right owner has demanded the goods of the bailee, he shall not be permitted, in any action brought against him by the bailee of the goods, to defend against his claims by showing clearly and conclusively that the plaintiffs acquired the possession of the goods tortiously or feloniously, without having obtained any right thereto." "As a general rule, a bailee cannot set up a right of property in a third person to defeat a recovery by his bailor, but this rule is subject to many exceptions; the defendant in such suit may show that the property has been taken from him by the process of law, or by a person having a paramount title. Nor are these the only exceptions. We are strongly disposed to think that the right of the true owner may be set up in all cases when upon his demand the property has in fact been delivered to him before the commencement of the suit." Mr. Angell, in his treatise on the Laws of Carriers (section 335), says: "If the goods are by the real owner taken from the possession of the carrier, will it afford an excuse for nondelivery to the bailor? In general, the carrier is not permitted to dispute the title of the person who delivers the goods to him, and such is clearly the rule when an adverse claim is merely asserted by the carrier of his own mere motion." Mr. Justice Story, in his commentaries on Bailment (section 582), says: "Another excuse which may be asserted under certain circumstances is, when the goods are demanded or taken from the possession of the carrier by some person having a superior title to the property. In general, the carrier is not permitted to dispute the title of the person who delivers the goods to him, or to set up an adverse title to defeat his right of action growing out of his contract. And this is emphatically the rule when that adverse claim

is not asserted by the superior claimant himself, but is merely asserted by the carrier of his own mere motion." Chancellor Kent, in his Commentaries (volume 2, p. 567), lays down the rule thus: "The depositary is bound to restore the deposit upon demand to tne bailor from whom he received it, unless another person appears to be the right owner. The bailee has a good defense against the bailor if the bailor had no valid title, and the bailee on demand delivers the goods to the rightful owner." So, in Shelbury v. Scotsford, 1 Yelv. 23, it was held that to a promise to redeliver a horse to the plaintiff, the defendant might plead that the horse was taken from him vi et armis by the true owner. In Sheridan v. New Quay Co., 4 C. B. (N. S.) 619, Mr. Justice Willes, delivering the judgment of the court, says: "The defendants were common carriers, and therefore bound to receive the goods for carriage. They could make no inquiry as to the ownership. They have not voluntarily raised the question; it was raised by the demand of the real owner before the defendants had parted with the goods. The same would have protected them against the real owner, if they had delivered the goods in pursuance of their employment without notice of his claim. It ought equally to protect them against the pseudo owner, from whom they could not refuse to receive the goods, in the present event of the real owner claiming the goods, and their being given up to him." This subject is discussed, and the rule as above stated recognized in the following cases: Floyd v. Bovard, 6 Watts & S. 75; Harker v. Dement, 9 Gill, 7; Lowermore v. Berry, 19 Ala. 130; Bliven v. Hudson R. R. Co., 36 N. Y. 403; 1 Fish. Dig. tit. "Bailment," p. 570; Edson v. Weston, 7 Cow. 280. The same rule seems to have been adopted by the Civil Code of this state. Sections 2949 and 2959 of the Revised Code of 1870, declare that "the depositary must restore the thing deposited only to him who delivered it, or in whose name the deposit was made, or who was pointed out to receive it." "He cannot require him who made the deposit to prove that he was the owner of the thing, yet if he discovers that the thing was stolen, and who the owner of it is, he must give him notice of the deposit, requiring him to claim it within due time. If the owner receiving due notice neglects to claim the deposit, the depositary is fully exonerated in returning it to the person from whom he received it."

Counsel for both parties admit that the jurisprudence of this state and the civil law is in harmony with the common law upon the question under consideration. Taking the rule as I have stated it to be the law settled by the authorities, should the evidence offered by the defendant and objected to by plaintiff be admitted? The evidence is of course offered to sustain the defense as set up in the answer. This, as stated by defendant, itself does not set up adverse title in another, and

a demand for the property by such adverse claimant, but construing the answer most strongly against the pleader, the defense seems to be a voluntary assertion of title in another by the common carrier, and a voluntary delivery of the property, without any demand or claim whatever of title by the party to whom it was delivered. The answer, according to the authorities cited, is bad, on general demurrer, and evidence for the purpose of sustaining it must be excluded, for if defendant proved precisely what it has alleged, it would avail it nothing. The defendant then being without proof to sustain the main defense on which it relied, there must be a finding and judgment for the plaintiff for the amount of damage actually sustained by him as the result of the wrongful act of the defendant. The law gives actual compensation for the loss actually sustained. Thus, if by the breach of contract by the defendant, the plaintiff entirely lost his goods, the measure of his damages would be the value of the goods. But, suppose in violation of its duty and contract, the defendant had delivered the plaintiff's goods to a person not entitled to them, and that person, on demand of plaintiff had, at once and without costs and charges, turned them over to the plaintiff, no court or jury would give him damages for the full value of the goods. His damages would be merely nominal, and he would be awarded nominal damages. "Another species of property," says Blackstone (2 Bl. Comm. c. 29, p. 438), "acquired and lost by suit and judgment at law, is that of damages given to a man by a jury as a compensation and satisfaction for some injury sustained." "Every one," says Lord Holt, "shall recover damages in proportion to the prejudice which he hath sustained." Fetter v. Beale, 1 Ld. Raym. 692. Damages—"Damna in the common law," says Lord Coke, "hath a special signification, for the recompense that is given by the jury to the plaintiff for the wrong the defendant hath done unto him." Co. Litt. 257a.

In this case the evidence clearly establishes, that after the delivery of the goods named in the petition had been made by the defendant to the said G. Lewis, Lewis accounted for the proceeds to the plaintiff to his entire satisfaction. This is proven by the testimony of two witnesses, and is not successfully contradicted. After the plaintiff had thus received the proceeds of the sale, with what show of justice can this court award him damages against the defendant for their full value? He has, in effect, received his goods from the person to whom the express company delivered them. He can only ask this court to give him compensation for the defendant's breach of contract—to recompense him—to make him whole—to put him in the same plight as if the express company had performed its contract by the delivery of the goods to him. The goods having been accounted for to him to his satisfaction, his

damage is only nominal. Nominal damages will compensate him, and the court awards him nominal damages.