# CASES DETERMINED

## *January Term, 1882.*

WELLS VS. THE AMERICAN EXPRESS COMPANY.

*January 11 — May 10, 1882.*

BAILMENT. (1, 2) Rights of true owner of property as against bailee or consignee. (4) Evidence of ownership. (6) True owner not bound by joint notice of garnishment to himself and another.

AMENDMENT OF PLEADING. *(3) Right to amend complaint* res adjudicata *in this case.*

GARNISHMENT. *(5) How jurisdiction of J. P. must appear. (6) Notice by garnishee to true owner.*

1. The true owner of personal property may enforce his right to it as against the consignor or consignee, or the carrier, or other bailor or bailee, whenever he sees fit to do so, before its delivery to the consignee as directed by the bailor, and before the bailee has answered as to his liability on garnishment.

2. A package of money belonging to W. alone, was sent by express directed to W. & C., and, upon W.'s demanding it as sole owner, without any assignment by C. of his apparent interest to W., or written order by C. to deliver to W., or offer of any receipt or acquittance from both, the express company refused to deliver it to W., claiming that the money had been subjected to process of garnishment in its hands. *Held,* that, apart from the question of garnishment, W. may recover the full amount of such moneys.

3. The propriety of allowing an amendment of the complaint herein after the first trial, in disregard of a stipulation between the parties on the first trial, is *res adjudicata* by the decision of this court on a former appeal (49 Wis., 224); although that decision was rendered under a misapprehension of the facts.

4. Although the cause of action in the complaint as last amended is independent of the transactions between the parties and others in

respect to the shipping and consignment of wagons, and the collection, upon the bill therefor, by defendant's agent, of the moneys consigned to W. & C., those facts were properly admitted in evidence to show W.'s exclusive ownership of the moneys so consigned.

5. In the statutory proceeding by garnishment in justice's court, jurisdiction must appear affirmatively from the record; and where that fails to show the affidavit required by the statute as the foundation of the proceeding, neither a docket entry that an affidavit was made and filed (not showing its contents), nor an appearance and submission to the court by the garnishee, can give validity to the judgment.

6. *It seems* that when W., the real owner, has asserted his individual and exclusive claim to property in a carrier's hands consigned to W. & C. jointly, a notice of a subsequent garnishment of the carrier in respect to such property, addressed to W. & C. jointly, is not such a notice to W. personally to appear and interplead, etc., as will discharge the carrier's liability to him.

APPEAL from the Circuit Court for *Racine* County.

The case is reported on former appeals in 44 Wis., 342, and 49 id., 224. To the third amended complaint the defendant answered a general denial, and also that several attachment suits had been commenced against one Finis Cartwright, and that the defendant was garnished as having property belonging to said Cartwright; that the plaintiff was duly notified of such garnishee proceedings, and the defense thereof tendered to him; that such proceedings resulted in the defendant being charged as such garnishee; and that the property for which he was garnished in that suit is the same for which the plaintiff sues in this. A motion by the defendant that the plaintiffs be required to pay the costs of defendant in the supreme court, and to give security for costs, was denied.

The case was tried by the court, a jury having been waived. The view taken by this court of the evidence sufficiently appears from the opinion. The circuit court found: 1. That on September 21, 1864, the defendant received to the use of this plaintiff, from one William H. Downs, of

Marshalltown, Iowa, a package addressed "Cartwright & Wells, Racine, Wisconsin," containing $400 in money, the property and money of the plaintiff, which package the defendant transported from said Marshalltown, Iowa, to Racine, Wisconsin, and that the reasonable charge for transporting the same was $1.50. 2. That the plaintiff, by his agent, on or about September 22, 1864, demanded said package of money from the defendant at Racine, and said defendant, then having said package of money in its possession at Racine, declined and refused to deliver the same to the plaintiff, but retained and had the said package of money in its possession on November 21, 1864, at the time this suit was brought, and has never since delivered the same or any part thereof to the plaintiff. 3. That there is due the plaintiff for the money contained in said package, the sum of $398.50 as principal, and for interest thereon to this date from September 23, 1864, the sum of $466.30, making in all $864.80.

From a judgment in favor of the plaintiff in accordance with such findings, the defendant appealed.

For the appellant there was a brief by *Finches, Lynde & Miller*, and oral argument by *Mr. H. M. Finch*. They contended, among other things, that it appeared by the evidence, that the money was not sent in pursuance of any contract with, or by any direction from, the plaintiff, nor in pursuance of any contract with Cartwright. Until actual delivery to the consignees, therefore, the money belonged to Downs. At any time before such delivery he could have recalled the package; and any loss of the money, in transit, would have been his. Hutchinson on Carriers, § 337; *Halsey v. Worden*, 25 Kan., 128; *Hooper v. C. & N. W. Railway Co.*, 27 Wis., 91; *Minturn v. Alexandre*, 5 Fed. Rep., 117; *Lake Shore & M. S. Railway Co. v. Hodapp*, 83 Pa. St., 22; and cases cited in former brief, 49 Wis., 226. It is not true, therefore, that the money was delivered to the defendant for the use and benefit of the plaintiff, or that the plaint-

iff was at any time the owner thereof. It was the duty of the defendant to make personal delivery, in accordance with the address on the package; and for a loss consequent upon any other delivery the company would be liable. *Southern Exp. Co. v. Van Meter*, 17 Fla., 783. The defendant performed this duty by what was in law equivalent to a delivery to Cartwright — one of the persons to whom the package was addressed.

For the respondent there was a brief by *Fish & Dodge*, and oral argument by *Mr. Fish*. They argued, *inter alia*, that the testimony showed that Downs sent the package in controversy as part payment for the wagons which he received from the plaintiff, and that the plaintiff recognized the act of Downs in sending the money by the defendant, as part payment on such wagons, and afterwards had a settlement with Downs for the balance due. The delivery of the money to the defendant being regarded, by both the consignor and the plaintiff, as a payment to the latter, it was in law such payment, and the defendant was the agent of the plaintiff for the receipt and transportation of the money, and the plaintiff could maintain the action for its recovery. *Ela v. Am. Exp. Co.*, 29 Wis., 611. The delivery of the money to the company by Downs discharged his indebtedness to the plaintiff to that extent. 2 Parsons on Con., 620, 621; *Wakefield v. Lithgow*, 3 Mass., 249; *Clark v. Mauran*, 3 Paige, 373; *Gurney v. Howe*, 9 Gray, 405.

The following opinion was filed February 7, 1882:

ORTON, J. In this case, reported in 49 Wis., 224, it was held that the amended complaint, on which the action was last tried, was for money had and received, and substantially charged that the money was the property of the plaintiff; and that, notwithstanding the former complaint set out the contract of consignment, the amendment was proper. The action under the amended complaint is not, therefore, based

upon the terms of the contract of consignment; and the finding that the defendant received the money to the use of the plaintiff, although strictly contradictory to the contract and the direction of the package, may not only be true, but warranted by the pleadings. When the cause was before this court, as reported in 44 Wis., 342, it did not appear from the evidence that the money belonged exclusively to the plaintiff, and it did appear that it belonged to *Wells* and Cartwright jointly, and that, therefore, the package was properly directed to them both. But it now appears from the evidence, and the circuit court has so found, that the money was the property of the plaintiff alone, as alleged in the amended complaint; and the circuit court rendered judgment in favor of the plaintiff alone, virtually holding that, notwithstanding the package was consigned to *Wells* and Cartwright jointly, and so directed, the company was liable to *Wells* alone as the real and exclusive owner of the money, and could not defend against his right on the ground that the package was otherwise directed. This is a very important question, and one which has not before been decided by this court, so far as I can find.

In respect to the manner in which the package was made up and directed by Downs, the consignor, the evidence is the same as on the former trial, that the package was directed jointly to the plaintiff and one Cartwright by the partnership designation of "Wells & Cartwright." There was no assignment by Cartwright of his apparent interest in the package to *Wells*, and no written order by Cartwright to deliver to *Wells*, and no offer of any receipt or acquittance from both. There was a verbal demand by *Wells*, and a verbal statement by Cartwright that *Wells* owned the money. The defendant refused, under such circumstances, to deliver to *Wells* alone, and insisted also that the money had been subjected to garnishee proceedings against Cartwright. Irrespective of the garnishment, the first and important question

arises, whether the plaintiff alone can recover this money upon proof of his individual and exclusive ownership of it, in disregard of the directions of the consignor. The question is the same as if a third person had claimed the package as against the consignees or the person to whom it was directed.

As a general principle it is unquestionably the law, as stated by the authorities cited by the learned counsel of the appellant, "that it is the duty of the company to make personal delivery in accordance with the address on the package; and if it is delivered elsewhere than as addressed, or to the wrong person, the company is liable for the consequent loss." In this case the delivery of the package to "Wells & Cartwright," the consignees, and to whom it was addressed, or to either of them for both, would have been a proper, and the only proper, delivery under the operation of this general principle. But to this general rule of law there are exceptions, one of which is that the true owner of the property may enforce his right to it as against the consignor or consignees or the carrier, or against the bailor or bailee, whenever he sees fit so to do, before its delivery as directed. His right is paramount to the claim of all others, no matter what may be their relations to each other, unless it is lost, or, for the time being, suspended, by his own conduct of surrender or estoppel. The terms of the contract of consignment, and the directions of the consignor, and the address upon the package, are all subject to the *jus tertii* whenever it is sought to be so enforced.

The exception, as stated by Browne, Law of Carriers, 221, is, that "the bailee must not give up the goods which actually belong to a third person, if he have notice of the fact, to the person who bailed them to him;" or, as stated by Mr. Redfield, C. & B., § 318, " otherwise he would pay in his own wrong if it should turn out that the property was in another, since the contract by construction is with the party entitled to claim the goods;" or, as it is held in *Ogle v. Atkinson*, 5

Taunt., 759, "a warehouseman receiving goods from a consignee who has had actual possession of them, to be kept for his use, may, nevertheless, refuse to redeliver them if they are the property of another and the latter prohibits the redelivery." This statement of the law is disapproved by Angell on Carr., § 355, based upon an intimation in the late editions of Story on Bailm., differing from the view of that learned author as expressed in his first work on that subject. But this principle is recognized by all the other elementary works on this subject as being established by the great weight of authority.

This change of opinion upon the question by Mr. Justice STORY is fully considered by Mr. Justice WILLES in the leading case of *Sheridan v. New Quay Co.*, 4 C. B. (N. S.), or 93 Eng. C. L., 617, and the first opinion of our learned author is approved. Perhaps it would not be proper to say that Mr. Angell fully disapproved of this principle; for the reason he gives for differing from the opinion in *Ogle v. Atkinson* does not really touch the question, for he says: "But this doctrine seems now to be untenable, and it is said that, in general, an agent has no right to *set up* an adverse title against that of his principal," etc. This reason does not militate against the principle above stated, for it is not claimed that the bailor can "set up," or, in other words, *of his own motion,* claim the property for a third person as the real owner.

Mr. Hutchinson, in his work on Carriers, § 405, says: "And if the carrier or other bailee, while still holding possession of the property, would defend against the claim of his bailor by *setting up* the paramount title of another, he must at least show that it is done by his authority and in his behalf, otherwise the bailee might avail himself of the title of a third person which might never be asserted by such person, and thus be enabled to keep the property for himself without a shadow of title, when by his contract he had undertaken to return to the bailor or to deliver it according to

his directions." The learned author, after thus admitting the reason which seems to have changed the view of Mr. Justice STORY on the main question, proceeds to state the principle as follows: "But while it is not enough that the carrier has become aware of the title or claim of a person other than the bailor or consignee to entitle him to *set up* such claim or title against the demand of the latter, yet if he has been notified by the claimant of his title, and has been requested not to deliver the goods according to his undertaking, he would no doubt be permitted, in an action against him by the bailor or consignee, to prove that such claimant was entitled to the goods, and had forbidden their delivery to the bailor, or according to his directions."

This statement of the principle embraces the present case most fully, for here the individual claimant, *Wells*, has not only claimed this package of money as his exclusive property, but has demanded it, and now brought this suit under the amended complaint for it as so much money had and received by the defendant company to his use as the real owner. It is admitted by all of the courts and by the elementary writers, that it becomes a difficult question for the bailee or carrier to determine as to whether he should deliver the consignment or deposit according to the strict terms of his contract, or to the claimant, and that his position is perilous, but he must act at his own risk. It is suggested by the English authorities that he may protect himself by a bill of interpleader, in which the rights of all of the parties may be determined. But, in the present case, no such embarrassment exists, for the claimant, as the real owner, has brought his suit for the express purpose of proving his title and of obtaining the money.

When the liability of the express company to respond to the claim of a third person as the exclusive owner of the property against the terms or directions of the consignment for delivery to another, or for delivery to himself and an-

other, is established by law, as now seems clear, it follows that such third person should recover in an action against the company upon proof of his ownership. It may be that such judgment would not be a bar against the suit of the other consignee or the consignor, because they are not made parties to the suit, but the evidence of the plaintiff's title has been furnished to the carrier, which, in an action by either, would be sufficient protection. But the difficulty and embarrassment of the carrier in such case do not operate against the principle that the real owner of the money has a right to recover it before it passes beyond his reach, by delivery to the one who does not own it, although he may be named as the consignee.

This principle obtains in all cases of bailment, and the *jus tertii* may be enforced even as against the contract of bailment, and, when enforced, will be made available to excuse and protect the bailee from performance or delivery according to its terms; and it is founded in reason, as well as sustained by a great preponderance of authority. There can be no distinction between its application in case the bailor or consignor seeks to reclaim the property from the bailee or carrier and in case the consignee seeks its delivery; for the rights of all the parties to the contract must yield to the paramount right of the real owner of the property.

In *Sheridan v. New Quay Co.*, *supra*, it is said: " The defendants were common carriers, and therefore bound to receive the goods for carriage. They could make no inquiry as to ownership. They have not voluntarily raised the question; it was raised by the demand of the real owner, before the defendants had parted with the goods." Upon the facts and findings in this case, this language is especially appropriate and authoritative.

This doctrine was denied by the earlier authorities, and it was held that if the bailee deliver the goods to the real owner, yet he shall be chargeable to the bailor (Rolle's Abr.,

606, tit. "Detinue"); and it is yet denied by many respectable authorities, but it is approved by nearly all of the text writers, and by the great weight and number of judicial decisions. *Hardman v. Willcock*, 9 Bing., 382; *Cheesman v. Exall*, 6 Exch., 341; *Wilson v. Anderton*, 1 B. & Ad., 450; *Dixon v. Yates*, 5 B. & Ad., 340; *Taylor v. Plumer*, 3 M. & S., 562; *Pattison v. Robinson*, 5 M. & S., 105; *Biddle v. Bond*, 34 Law J., Q. B., 137; *Thorne v. Tilbury*, 4 H. & N., 534; *Bliven v. Hudson River Railroad Co.*, 35 Barb., 188; *Bates v. Stanton*, 1 Duer, 79; *Rogers v. Weir*, 34 N. Y., 463; *Western Transportation Co. v. Barber*, 56 N. Y., 544; *Floyd v. Bovard*, 6 W. & S., 75; *King v. Richards*, 6 Whart., 418; *Lowremore v. Berry*, 19 Ala., 130; *Rosenfield v. Express Co.*, 1 Woods, 131; *The Idaho*, 93 U. S., 575; *American Express Co. v. Greenhalgh*, 80 Ill., 68.

It is quite clear, from the evidence on this last trial, that the wagons which were purchased and received by Downs, the consignor, belonged to the plaintiff alone, and that Cartwright had no interest in them, and that the money ought to have been consigned to him alone, instead of to him and Cartwright jointly. After its arrival, the plaintiff, through his agent, claimed this package as belonging to him exclusively, and the agent of the defendant was informed by both the consignees that the money belonged to the plaintiff alone, and the plaintiff demanded it of the defendant. The case is, therefore, brought clearly within the above principle, and the plaintiff is entitled to recover, unless something was done which was tantamount to a delivery of the money to Cartwright before this claim of the plaintiff was set up and demand made by him for it as his own property, exclusive of Cartwright. This leads to the question whether this money has been subjected to the garnishment of the defendant in cases or on judgments against Cartwright, before this claim and demand of the plaintiff for all of the money as his own, which is the only pretense of its delivery to the consignees.

It seems that, when this case was tried before, there was a stipulation of the parties that such proceedings of garnishment were valid and regular, and waiving the record evidence thereof; but before the last trial the circuit court made an order allowing the plaintiff to amend his complaint, and to withdraw that stipulation, and that order was affirmed by this court. 49 Wis., 224. In the opinion of the present chief justice in the case, it was said: "If the dockets of the justices who rendered these judgments were actually deposited in court, there was no hardship in requiring the defendant to resort to them to prove its defense." This language would seem to imply that it was supposed that the records deposited in court were sufficient to prove all that was admitted in the stipulation, as to the validity of the garnishee proceedings by which this money was taken from the defendant; and this court evidently acted upon such supposition, and was not informed otherwise. If it now appears that those records are not sufficient to show what that stipulation admitted, it may be the misfortune and hardship of the defendant, but it is not perceived how it can now be remedied.

Had this court been informed that such records would not show the facts so admitted in the stipulation, the decision in respect to it might have been different; and that such fact did not appear was not the fault of the court. That case is now *res adjudicata* and beyond our control, and the present case must be considered as if no stipulation had been made, and the record evidence in the case, which consists exclusively of the docket entries of the justice of the peace who entertained jurisdiction of the garnishee proceedings against the defendant, must stand or fall by themselves. It seems that the papers are lost or cannot be found, and there was no attempt to prove their contents. The entries in the docket of a justice showing appearance of the defendant would be sufficient to warrant the judgment in ordinary

common law causes. But the proceeding of garnishment is special and statutory, and in derogation of the common law. It is a proceeding by which the debtor is compelled to pay another than his creditor, and the right of the creditor is transferred to another against his will; and this can only be done by force of the statute strictly pursued. It is in the nature of a proceeding *in rem*, by which the plaintiff is sought to be invested with the right to appropriate to the satisfaction of his claim against the defendant a debt due from the garnishee to him. This being the nature of the proceeding, the principle is elementary that jurisdiction of the court therein must affirmatively appear. *Robertson v. Kinkhead*, 26 Wis., 560; *Supervisors of Crawford Co. v. Le Clerc*, 3 Pin., 325; *In re Booth and Rycraft*, 3 Wis., 157.

The late learned and eminent chief justice of this court, in *Steen v. Norton*, 45 Wis., 412, uses this language in respect to this proceeding: "It is not the policy of the statute to place this anomalous action, like ordinary actions, at the mere discretion of the plaintiff, or to give justices of the peace unqualified jurisdiction of it, as in ordinary actions, where every person can become a plaintiff, have process, and put the justice's jurisdiction in motion, on demand. The plaintiff in garnishee proceedings, as in attachment as mesne process, replevin, and the like, can put in motion the jurisdiction of the justice only by complying with statutory prerequisites. And the justice takes jurisdiction of the proceeding only upon the plaintiff's compliance with the preliminaries which the statute makes the condition of jurisdiction. In order to entitle a plaintiff to have recourse to the process of garnishment, in order to confer on the justice jurisdiction to entertain it, *he must first make the affidavit required by the statute.* . . . An affidavit materially defective stands as no affidavit. All proceedings founded on a materially defective affidavit are *coram non judice.* And no appearance, no submission of the garnishee, can operate to

waive the defect of jurisdiction. . . . He cannot voluntarily appear and substitute his creditor's creditor for his own, because that goes to jurisdiction of the subject, not to jurisdiction of his person."

In most and perhaps all of the cases of garnishment sought to be introduced in evidence in defense of this action, there is an entry by the justice that an affidavit was made and filed. What the affidavit contained does not appear. The affidavit, being the prerequisite of jurisdiction, must not only appear upon the records, but be strictly sufficient; and, not appearing, no jurisdiction whatever is shown in the justice. This is a fatal objection to the proceedings, and the circuit court properly refused to admit them in evidence.

The only remaining questions rest upon the receiving of improper evidence, and the adjustment of the costs. The testimony received against the objection of the appellant relates to the transaction of the shipment of the wagons, and the collection bill therefor, forwarded to the agent of the defendant at Marshalltown, Iowa. This evidence was, of course, entirely immaterial so far as the subject matter of the action is concerned; for this action is simply for money had and received by the defendant to the use of the plaintiff, under the last amended complaint; and even the relations of consignor, carrier and consignee have nothing to do with it, except as facts showing the defendant in possession of money belonging to the plaintiff, in connection with other proof that the money belonged to the plaintiff *alone*, and not to the plaintiff and one Cartwright jointly, as implied by the direction upon the package. For the purpose of establishing this last-mentioned fact, the ownership of the wagons before they were shipped, their shipment, and the terms of their delivery to Downs, the purchaser, and the collection bill sent to the agent of the defendant, would be pertinent evidence; and for such purpose at least it was admissible. The question in respect to the costs would seem to be like

the one raised on the former appeal, and then held to be within the discretion of the circuit court.

*By the Court.*— The judgment of the circuit court is affirmed.

LYON, J., took no part.

The appellant moved for a rehearing; and the following opinion was filed May 10, 1882:

ORTON, J.   On denying the motion of the appellant for a reärgument of this cause, I deem it proper to briefly present the views of the court in respect to the question upon which such reärgument is asked.   The testimony of Benjamin W. Hall, taken on a previous trial, was read as evidence on the last trial; and a part of his testimony was, that certain garnishee summonses were served upon him, and that he sent notices thereof by mail to Cartwright and *Wells.* Thereupon, "the plaintiff objected to all evidence relating to the so-called garnishee proceedings, and the pretended service of notices therein, on the ground that the same was incompetent and immaterial, and because each of the pretended judgments was entered without jurisdiction, and after the commencement of this action."   This objection appears to have been read in connection with this testimony of the witness Hall, and became a part of the case made on the last trial.   At that time there was a stipulation that the original papers in said garnishee proceedings need not be produced, and such stipulation had been withdrawn before the last trial.   On the last trial there was no evidence offered in respect to said garnishee proceedings, except the docket entries of the justices in the several cases; and as to some of them the docket entries were objected to, on the grounds "that they were incompetent and immaterial, and that the plaintiff had no notice of such proceedings;" and as to others they were objected to on the same grounds, "and on the

Wells vs. The American Express Co.

further grounds that the justice had no jurisdiction of the action, nor of the defendant therein, and had no power to render judgment against the defendant."

All of these docket entries were ruled out, presumably on these grounds. No other evidence, of record or otherwise, was offered of the garnishee proceedings, and this was the only point in respect to such proceedings before this court on the appeal. The ruling of the circuit court was sustained on the ground that the jurisdiction of the justices in the proceedings did not appear. It is now complained and contended that the question of jurisdiction was not raised, and was therefore waived. That objection is sufficiently answered by the foregoing references. But, aside from this specific objection, the docket entries were clearly *incompetent* without first showing jurisdiction, and such jurisdiction was not shown by such entries. In the brief of the learned counsel of the respondent the point was distinctly made that the proceedings, so far as sought to be shown, were void for want of jurisdiction. This point was answered in the brief of the learned counsel of the appellant as follows: " The defendant was adjudged by the justice's court to pay the money to the creditors suing out the garnishees. The papers are all lost. There is nothing left but docket entries; nor does it matter, as we see, whether the justice's court was right or wrong in its decision. The money was subject to garnishment."

No objection was made, it is complained, that the court had no jurisdiction. We have seen that such objection was distinctly made, and more than once. No objection was made to the introduction of the papers in the garnishee proceedings, including the affidavit, by which only jurisdiction could be shown, because they were not offered, and there was no offer to prove their contents if lost. It would seem that the contention of the learned counsel of the appellant arises from a misapprehension of the record, and from not remembering that the stipulation, which probably dispensed

with the proof of the garnishee proceedings beyond the docket entries, had been withdrawn previous to the last trial.

Having thus disposed of the question upon which the motion for a reärgument mainly depended, we may say, in respect to the suggestion that this court misapplied the law in regard to the liability of bailees in the decision of the case, and that the case was disposed of upon a question not argued by counsel, that our view of the case expressed in the opinion, that the real owner could reclaim his property even as against the carrier or bailee at any time before delivery to the consignee, would apply equally to a case where the real owner had asserted his claim before the carrier or bailee had delivered up the property, or answered as to his liability on garnishment. It appears that the plaintiff had asserted his individual and exclusive claim to the packages before the defendant had answered as garnishee. The joint notice to the plaintiff and *another*, placed in the mail, was certainly not a sufficient notice to the plaintiff personally that he should appear at the time of the answer, and interplead or assert his claim to the property before the justices, to discharge the defendant from liability. This, of course, is clearly *obiter*, because no garnishee proceedings were shown on the trial; and it is here suggested only to make it at least probable that the garnishee proceedings, if proved, would have been no defense to the action.

*By the Court.*— The motion for reärgument is denied, with $25 costs.