STATE OF NEBRASKA, EX REL. AUSTRIAN, WISE & COMPANY, v. J. F. DUNCAN, COUNTY JUDGE.

FILED SEPTEMBER 20, 1893.   No. 3830.

1. **Attachment:** GARNISHMENT: AFFIDAVIT. In order to found proceedings in garnishment in aid of an attachment, it is necessary that the affidavit required by law be filed in the court issuing the process before notice is served upon the garnishee.

2. ——: ——: JURISDICTION: SPECIAL APPEARANCE. In order that proceedings in garnishment may be pleaded against third parties, it must affirmatively appear from the record that the steps were taken necessary to confer jurisdiction, and a voluntary appearance and answer by the garnishee does not supply the place of such jurisdictional proceedings.

3. ——: ——: PRIORITIES. Under section 946 of the Code, where several attachments are levied upon the same property, or the same persons are made garnishees in several cases, the justice issuing the order first served may, upon motion of any of the plaintiffs, determine the amounts and priorities of the several attachments; and he has authority to do this as well when the validity of some of the attachments or garnishments is disputed as when their validity is unquestioned.

4. ——: A DETERMINATION OF PRIORITIES so had constitutes an adjudication which cannot be collaterally attacked.

5. **County Courts:** POWER TO VACATE JUDGMENTS. The county court, acting within its special jurisdiction, has power to vacate

judgments and final orders during the term at which they were rendered.

6. ———: ———. In cases within the jurisdiction of a justice of the peace a county judge possesses only the powers of a justice, and can only vacate judgments and final orders in cases where justices are expressly authorized so to do.

7. ———: ———. A county court acting within its special jurisdiction may vacate its judgments or final orders for irregularity in obtaining the same upon proceedings had in pursuance of sections 602 to 610, inclusive, of the Code.

8. ———: ———: VALIDITY OF ORDER: COLLATERAL ATTACK. An order vacating such judgment or final order is not void for want of a finding that the applicant had a valid defense or cause of action. The want of such finding renders the proceedings, at most, only irregular or erroneous, and they are not on that account open to collateral attack.

ORIGINAL application for *mandamus.*

*Wigton & Whitham,* for relators.

*D. A. Holmes, John R. Hays,* and *Mahoney, Minahan & Smyth, contra.*

IRVINE C.

This is an original application for *mandamus* to require the respondent, county judge of Madison county, to pay to the relators the amount of a judgment recovered by relators out of certain moneys paid into court in pursuance of garnishment proceedings and alleged to be properly applicable to the satisfaction of relators' judgment. There was an order of reference and a report made by the referee in favor of the relators, and the case now comes up upon the relators' motion for judgment upon the report and the respondent's exceptions to the report.

Upon December 1, 1888, suits were begun in the county court of Madison county by Kaminer, Prinz & Co., J. T. Robinson Notion Company, Frankenthal, Freudenthal & Co., W. V. Morse & Co., and Turner & Jay against Corn-

bleth & Pelzer, and attachment proceedings were instituted in each case. Upon the part of the respondent there was offered in evidence before the referee affidavits entitled in each case, as follows:

"D. A. Holmes, one of the attorneys for the plaintiff above named, being first duly sworn, deposes and says that he has good reason to believe, and does believe, that the Norfolk National Bank has property of the defendant, to-wit, a stock of merchandise, in its custody in this county.

"D. A. HOLMES.

"Subscribed in my presence and sworn to before me this 1st day of December, 1888.      GEORGE M. BEELS,

"*Justice of the Peace.*"

These affidavits were all objected to as incompetent. The copies appearing in the bill of exceptions show no certificate of filing, but from some arguments in the brief it may be inferred that they were delivered to the officer with the order of attachment upon December 1. They were not filed in court until May 11, 1889. The officer returned the orders of attachment showing that upon December 1 he served the Norfolk National Bank as garnishee in each of said cases. Upon December 3 the relators commenced the action resulting in the proceedings upon which this case is based; they also instituted attachment proceedings, filed an affidavit for garnishment against the Norfolk National Bank, R. E. Levy, and John R. Hays. Upon December 4 notice of garnishment was served. These proceedings are admitted to be regular in every respect. Upon January 14, 1889, John R. Hays filed a written answer, verified by his oath, a single paper bearing the titles of all of the cases, and proceeding as follows:

"Comes now John R. Hays, and for answer in garnishment in the above entitled causes of action, and in each of them, shows the court as follows: That on December 1, 1888, the defendants Cornbleth & Pelzer made and executed a chattel mortgage to the Norfolk National Bank, of Norfolk,

Nebraska, for $500, on all of defendants' stock of mer-
chandise, etc., in Norfolk, Nebraska, and on the same day·
defendants executed another chattel mortgage for $500 on
the same goods to R. E. Levy, subject to the first above
described mortgage, both of which mortgages were on the
same day placed in the hands of said John R. Hays for col-
lection; that immediately affiant, on the same day, took
possession of the mortgaged property under both of said
mortgages and proceeded to sell the same at both public and
private sale as thereto authorized; that all the mortgaged
goods have been sold and the same have realized the sum of
$2,527.98; that the expenses of said sale so far paid out
amount to the sum of $297.73; that affiant does not now
know of any further expenses, but there may possibly be a
small bill or two yet unpaid; that affiant has paid to the
Norfolk National Bank the amount due said bank on the
above mentioned mortgage, as principal, $500, and interest,
$2.08; total, $502.08; that affiant has not yet paid over to
R. E. Levy the amount due on said mortgage, but still holds
the same; that there still remains in the hands of affiant
the sum of $1,728.17, as follows:

Amount realized..........................................$2,527　98
Expenses paid...........................　$297　73·
Paid Norfolk National Bank...........　　502　08
　　　　　　　　　　　　　　　　　　　　　　　　————　　　.　799　81·

　　　　　Now in affiant's hands ...... .............. $1,728　17

"That there is now due and should be paid to R. E.
Levy, on the mortgage hereinbefore mentioned, the sum of
$500, with interest thereon at ten per cent from December
1, 1888, and the balance left after that is held subject to the
order of the court; that the Norfolk National Bank, nor
the officers thereof, nor R. E. Levy, know anything about
the amounts realized, nor the expenses attending the same,
and none of them have any money or property of any
kind in their control or possession, and had not at the time

of garnishment, as affiant is informed and verily believes; that affiant therefore respectfully askes that garnishee Norfolk National Bank and garnishee R. E. Levy be discharged as such garnishees; that affiant be directed by the court to pay to R. E. Levy the amount due on the mortgage mentioned, and that the court direct this affiant as to the amounts and persons to whom to pay the balance left, and that, when so paid, affiant be also discharged under the garnishment proceedings."

In the course of time judgments were rendered against Cornbleth & Pelzer in each of the cases, and upon May 17 an order was made in each case directing Hays to pay into court the sum of $1,205.84, in accordance with his answer. Upon the same day in the Kaminer, Prinz & Co. case the following order was made:

"May 17, 1889, 1 P. M., this being the 12th day of the May, 1889, term of this court, the attorneys for the plaintiff appeared and asked to have an order made requiring the garnishee in this action to pay into court the amount acknowledged by him to be in his hands belonging to defendant as per answer of garnishee on file.

"F. P. Wigton, attorney for Austrian, Wise & Co., Hansen Empire Fur Factory, and James Forrester & Co., appeared and in open court objected to making order and distribution in the order of service for the reason that the affidavits for garnishment were not sufficient, and are void, and asked to have the same distributed in the order of service in the cases of Austrian, Wise & Co., Hansen Empire Fur Factory, and James Forrester & Co.

"Attorney for plaintiff D. A. Holmes filed affidavit, marked Exhibit 'B,' attached to affidavit of garnishment marked Exhibit 'A.' (This affidavit shows that the affidavit in garnishment was handed to the officer before notice in garnishment was served.)

"After hearing the argument of counsel the objection is overruled, to which attorneys except, and it is ordered that

the answer of J. R. Hays, filed in garnishment in this case, be taken as true, and that the same be allowed, and that he pay me the sum found to be due the defendants after the payment of the mortgage to R. E. Levy, as stated in the answer in garnishment in this action filed January 14, 1889. I find that attachment in this case was levied December 1, 1888, at 11:15 P. M., and is prior to all other attachments in this case. It is therefore considered by me that Joseph Kaminer & Co. has prior lien upon the property attached in this case, and that the judgments be paid in the order of the priority of liens as follows:

"First—Joseph Kaminer & Co., served December 1, 11:15 P. M.

"Second—J. T. Robinson Notion Co. and Frankenthal, Freudenthal & Co., served December 1 at 11:20 P. M.

"Third—W. V. Morse & Co. and Turner & Jay, served December 1, 1888, at 11:30 P. M.

"Fourth—W. V. Morse & Co., served December 3, 1888, at 11:15 P. M.

"Fifth—James Forrester & Co., Hansen Empire Fur Factory, and Austrian, Wise & Co., served December 4, 1888, at 7 A. M.

"Witness my hand this 18th day of May, 1889.

"J. F. DUNCAN,
" County Judge."

Upon May 18 the following order appears:

"It appearing to the court that the above findings and orders, commencing with F. P. Wigton, attorney for Austrian, Wise & Co., etc., as found on page 168 and closing at middle of page 181 this docket, were made and entered through a mistake and misunderstanding between the court and the parties to be affected thereby, by their attorneys, as to what the application made by said attorneys was, the said findings and orders are hereby set aside, vacated and held for naught. It is therefore ordered that John R. Hays, heretofore garnished in this action, pay to me the sum

of $1,205.84, the amount admitted by him to be due said defendant as per his answer heretofore filed in this case.

"J. F. DUNCAN,
"*County Judge.*"

The respondents offered in evidence a transcript of the county court records as follows:

"November 28, 1891, John R. Hays appeared as attorney for Joseph Kaminer & Co. in the above entitled case and filed motion, supported by affidavit, to have the order and entry made in this case by this court on the 18th day of May, 1889, vacated and stricken out, so far as the same attempts and purports to reverse and set aside the order made by this court in this case on the 17th day of May, 1889. This vacation and correction is asked at this time on the ground of irregularity in obtaining the judgment or order now complained of.

"It appears to the court from proof on file, that F. P. Wigton and Wigton & Whitham have been duly notified of this application and that they have accepted service of such notice. By agreement of the parties this case is continued to December 5, 1891, at 1 o'clock P. M.

"Now on this 5th day of December, 1891, at 1 o'clock P. M., D. A. Holmes appeared for plaintiff Joseph Kaminer & Co., and in favor of said motion; F. P. Wigton appeared adversely and objected to the jurisdiction or right of the court to entertain said motion, to hear any evidence in support thereof, or make the change prayed. Said F. P. Wigton filed no answer or demurrer to plaintiff's demand, but made only the objection that the court could not, for want of jurisdiction, modify or in anywise change the order complained of. This objection was overruled, but the said Wigton made no exception to this ruling.

"The sworn testimony of J. F. Duncan and D. A. Holmes was then offered to the court, and the cause was submitted to me upon the pleadings and the evidence. In consideration whereof I find that the order made by J. F.

Duncan, judge of this court, on the 18th day of May, 1889, in this cause, as such order appears recorded at the middle of page 181 of this docket, was irregularly obtained and should be set aside; that said order was made for the purpose of changing and reversing the order and judgment of this court in this cause on the 17th day of May, 1889. The court finds that both parties in interest were present in court on the 17th day of May, 1889, and argued the case, and upon such argument and presentation of the case the order and judgment of that date were entered.

" The court finds that the order made herein on the 18th day of May, 1889, was procured at the instigation and request of the parties who appeared in this cause adversely to the plaintiff, and that said order of May 18, 1889, was thus procured without the knowledge or consent of the plaintiff and in his absence. The court further finds that the statements contained in plaintiff's motion are true, and that the motion should be allowed and the prayer thereof granted.

" It is therefore considered and adjudged that the docket in this case be, and the same hereby is, corrected by striking out and setting aside the entry made by this court in this case on the 18th day of May, 1889, so far as the last named entry purports to modify or vacate the judgment of this court entered in this case on the 17th day of May, 1889. It is further ordered that said judgment entered as aforesaid on the 17th day of May, 1889, shall stand in full force as the legal judgment of this court in this case, and for the distribution of the money mentioned to the several creditors named in said judgment.          M. J. MOYER,

"*County Judge.*"

This offer was objected to as incompetent, immaterial, and because the court had no jurisdiction to make the order contained in the record. The objection was sustained by the referee.

It will be observed that the relators' case was not begun

until two days after the notices of garnishment had been served in the other cases, and the question involved is as to the validity of the proceedings in those cases. The facts as above stated are practically undisputed, and upon these facts the referee found that the Norfolk National Bank did not appear or answer as garnishee in any of the actions, but that John R. Hays did voluntarily appear in the five first commenced, no notice of garnishment having been served upon him. The contention centers upon this finding and upon the referee's conclusion that the county court obtained no jurisdiction by virtue of the garnishment proceedings in the cases first begun, the affidavits being held insufficient, and the garnishee having appeared voluntarily.

A question was raised as to the sufficiency of the affidavits in the cases begun December 1. The referee held that they were insufficient. It is said, first, that the affidavits are insufficient in form to authorize any garnishment proceedings because they do not show that the Norfolk National Bank is within the county where the actions were brought. Whether the omission of this averment renders the garnishment proceedings void, or whether it is a mere irregularity which may be waived by the garnishee's appearing and answering, it is not necessary to here decide.

It is also urged that the garnishee in the actions of December 1 was the Norfolk National Bank, while the answer was made by Hays in his own behalf, and he was a mere volunteer. This question is also eliminated from the case by the conclusion reached upon the next question, which, we think, goes to the foundation of the whole proceedings.

A recurrence to the statement of facts will show that there is nothing in the records of the cases of December 1 showing that any affidavits for garnishment were filed in the county court until May 11, 1889, long after relators' rights accrued, and after service upon the garnishee. On behalf of respondent it is argued that our statute only requires that such an affidavit should be *made* and not that

it be *filed* in the court. The question is a new one in this state, but the language of the Wisconsin statute is the same as our own, and the supreme court of Wisconsin, in the case of *Wells v. American Express Co.*, 55 Wis., 23, has, we think, determined the question in consonance with law, and upon general legal principles which cannot be questioned. It is there said: "The entries in the docket of a justice of the peace showing appearance of the defendant would be sufficient to warrant the judgment in ordinary common law causes. But the proceeding of garnishment is special and statutory and in derogation of the common law. It is a proceeding by which the debtor is compelled to pay another than his creditor, and the right of the creditor is transferred to another against his will, and this can only be done by force of the statute strictly pursued. It is in the nature of a proceeding *in rem* by which the plaintiff is sought to be invested with the right to appropriate to the satisfaction of his claim against the defendant a debt due from the garnishee to him. This being the nature of the proceeding, the principle is elementary that jurisdiction of the court therein must affirmatively appear. * * * In most, and perhaps all, of the cases of garnishment sought to be introduced in evidence in defense of this action there is an entry by the justice that an affidavit was made and filed. What the affidavit contained does not appear. The affidavit, being a prerequisite of jurisdiction, must not only appear upon the records, but be strictly sufficient; and not appearing, no jurisdiction whatever is shown in the justice." And, as said in *Steen v. Norton*, 45 Wis., 412, "In order to entitle a plaintiff to have recourse to the process of garnishment, in order to confer on the justice jurisdiction to entertain it, he must first make the affidavit required by the statute. * * * All proceedings founded on a materially defective affidavit are *coram non judice*, and no appearance, no submission of the garnishee, can operate to waive the defect of jurisdiction."

It will be observed that the court thought it necessary not only that a sufficient affidavit should affirmatively appear, but that it must appear from the records of the court. In order for the affidavits to appear from the record they must be filed, and the question then recurs, when is it necessary that the filing should take place? We answer that it should be before the notice is served. Respondent contends that this is inconvenient, as in some cases causing delay which might be hazardous, and he supports that contention by the language of the statute requiring only the making of an affidavit. The argument *ab inconvenienti* is clearly unsound. It might as well be applied to writs of attachment, executions, or other process which issue only from courts in pursuance of proceedings already had therein; and such force as the argument might have is more than met by the consideration that it would be on many accounts dangerous and unjust to permit an administrative officer to act in such extraordinary cases upon the authority of documents placed in his possession and not deposited in a public office. So far as the question turns upon the language of the statute, it may be observed that sections 200 and 926 of the Code, relating to undertakings for attachments, merely require the undertaking to be *executed* in the office of the clerk or the justice without any specific direction that they should be filed. Section 219 provides for the discharge of an attachment upon the *execution* of a bond to perform the judgment. Section 255, relating to injunction bonds, provides that no injunction shall operate until the party obtaining the same shall *give* an undertaking. It would hardly be claimed that in any of these cases the undertaking or bond would be effectual until filed and made a part of the record of the case. For the reasons stated in the Wisconsin cases the garnishment proceedings were without jurisdiction until May 11, 1889, when the affidavits were filed. Had they been contested down to that time they must have failed, and it will not do to allow the

44

filing of the affidavits upon that date to have a retroactive effect, and render valid proceedings had long before, and which both the courts and interested parties might rightfully assume from the state of the record down to that time to be wholly invalid.

The next question which arises is as to the effect of the proceedings of May 17, 1889. The record shows that the attorney for the relators on that day asked for an order of distribution in favor of the relators and certain others, excluding the plaintiffs in the case of December 1; that there was a hearing upon this motion and a finding of the order of priority among the different plaintiffs. Section 232 of the Code provides that where several attachments are executed upon the same property or the same persons are made garnishees, the court, on motion of any of the plaintiffs, may order a reference to ascertain and report the amounts and priorities of the several attachments. This power clearly confers upon the court authority to consider such report as in other cases and adjudicate priorities. Section 946, relating to justices of the peace, provides that in such cases the justice issuing the first order served, on the motion of any of the plaintiffs may determine the amounts and priorities. It is claimed by the relators that the proceedings had on May 17 were not within the power conferred by these sections, for the reason that the validity of the proceedings was involved. In other words, respondent urges that the statute should be construed so as to restrict it to cases where the validity of the different orders is unquestioned. Such a construction practically defeats the statute, because in such cases there is usually no occasion for any adversary proceedings. We think the object of these sections was to provide a speedy and convenient method of determining such conflicting claims. The record shows that these proceedings were had upon the motion of the relators and they were bound thereby. If these proceedings remain in force they constitute an adjudication

State, ex rel. Austrian, Wise & Co., v. Duncan.

of the whole of the controversy against the relators which could only be attacked by appellate proceedings, and not collaterally.

The order of May 18 purports to vacate the proceedings of the 17th. Was it effectual for that purpose? The provisions regarding courts of records apply to county courts, while acting within their special jurisdiction, and such courts have the same powers as the district court to vacate judgments or orders during the term at which they were rendered. (*Noakes v. Switzer*, 12 Neb., 156; *Volland v. Wilcox*, 17 Id., 46.) An inspection of the calendar shows that May 18 was within the term as fixed by statute, and the order was therefore within the power of the court in those of the cases involving upwards of $200; and its effect was to vacate the proceedings of May 17 in those cases. There was one suit begun by W. V. Morse & Co., in which less than $200 was claimed, and another by Turner & Jay, of the same character. As to these cases the county judge had only the jurisdiction of a justice of the peace, and, except in those cases especially provided by statute, a justice of the peace has no power to set aside a judgment or final order after its rendition. (*Cox v. Tyler*, 6 Neb., 297; *Templin v. Snyder*, 6 Id., 491; *State, ex rel. Carter, v. King*, 23 Id., 540.) The order of May 18 was a nullity in the two cases referred to, and as to those the order of May 17 remained in force.

Finally, what was the effect of the proceedings of December, 1891? This was meant to be a proceeding under section 602 of the Code. It was brought within the time allowed by law; there was an appearance on behalf of relators, and the order of May 18 was set aside and distribution ordered in accordance with the order of May 17. By section 610 of the Code the provisions of 602 are made applicable to county courts. It will be observed that in the record of 1891 there was no express finding that the applicant had a "valid defense or cause of action." This

phrase, as applied to these proceedings, must be taken as meaning good grounds for having an order entered different from that which it was sought to set aside. It is probable that by direct proceedings the order of 1891 might have been reversed for want of such a finding. The failure to make such finding did not, however, oust the court of jurisdiction or open the proceedings to collateral attack. We think, therefore, that the referee erred in not receiving in evidence the record of November and December, 1891. The result of these proceedings is to reinstate the orders of May 17, and the referee should have found that the whole matter herein in controversy had been adjudicated in those proceedings adversely to the relator. We think the adjudication was erroneous, but the remedy for that was by appeal or by proceedings in error. It follows that the writ must be denied.

WRIT DENIED.

THE other commissioners concur.