ABASI BROS. *v.* LOUISVILLE & N. R. Co.

[76 South. 665, In Banc.]

1. TROVER AND CONVERSION. *Title. Custody of replevied property.*
    Where a carrier in whose custody the sheriff left replevied property, failed to deliver it to the defendant in replevin, who gave

bond for it but turned it over to the plaintiff in replevin and defendant thereupon sued in trover, tendering the issue of title, which was decided against him, the defendant in the trover suit was not liable, since the bond given by defendant in replevin did not confer title, but at most merely the right of temporary possession.

2. TROVER AND CONVERSION. *Taking of property. Evidence. Sufficiency.*
The court held that the evidence set out in the opinion was sufficient in this case to show that the plaintiff in replevin to whom one defendant gave the property for which the other defendant sued in trover, lost the property replevied through the act of some person without authority of law.

3. CARRIERS. *Delivery of property to stranger. Liability.*
If a shipper of property is not the real owner, the carrier may, upon demand, turn the property over to the true owner and defeat the shipper's claim or suit for failure to deliver by an affirmative showing that it had turned the goods over to the true owner.

4. CARRIERS. *Delivery of property to stranger. Liability.*
Presumptively the bailor or shipper is entitled to the property as against the carrier, and the bailee cannot himself hold the property by setting up title in a third person, but this rule has no application when the carrier yields to the paramount claim or title of the true owner.

5. CARRIER. *Action for failure to deliver. Burden of proof.*
To justify a delivery to the true owner contrary to or without the orders of the shipper, the carrier assumes the burden of proving the ownership at the time of such delivery.

ON SUGGESTION OF ERROR. FOR former opinion see 75 So. 756.

The facts are fully stated in the opinion of the court.

*Mize & Mize,* for appellants.

*White & Ford* and *B. E. Eaton,* for appellee.

STEVENS, J., delivered the opinion of the court.

Upon a careful consideration by the full court of the suggestion of error, we conclude that we were in error

in reversing the judgment of the trial court, and that the suggestion of error should be sustained, and the judgment of the learned circuit court affirmed. It is stated in the opinion heretofore delivered that this case is different from the ordinary case where goods are consigned to a railroad company for shipment and are by the railroad company delivered to a party other than the consignee. We stated that the question of ownership presented an issue which was pending in the circuit court in the replevin suit, and that Abasi Bros., who had given bond for the forthcoming of the property, had the right to the possession, and the option of either returning the property in pursuance of the judgment of the court in the replevin suit or in lieu thereof to pay the value. We overlooked, or at least did not attach due importance to, the fact that appellants, the very parties who had given the forthcoming bond, did not look to the replevin suit for the protection of their rights, but, without waiting for a trial of the action in replevin, initiated the present litigation by filing the usual declaration in trover.

The situation of the parties should be remembered. Both the parties to the present action were defendants in the replevin suit. The plaintiff in the replevin suit was the Gulfport & Mississippi Coast Traction Company. This action of replevin was instituted against three defendants, and this without any showing that the three defendants had any joint control over the property, or that one defendant was in any wise responsible for the acts of his codefendant. The condition of the bond executed by the one defendant, Abasi Bros., was to have the property before the court "to satisfy the judgment of said court in the action of replevin by said plaintiff." Abasi Bros., as a defendant in the replevin suit, never in fact got possession under the bond. Before they obtained the actual possession, their codefendant, the Louisville & Nashville Railroad Company, turned the property over to what

it conceived to be the real owner. Abasi Bros. then did not seek an *order of the circuit court having jurisdiction of the replevin in aid of their right to possession under the bond; and this record does not show what disposition, if any, has been made of the replevin suit. When their codefendant, the Louisville & Nashville Railroad Company, turned the property over to the plaintiff in replevin, appellants anticipated any proceedings that might be had in the replevin suit by themselves instituting this separate action against their codefendant in the replevin suit for the actual value of the property. In their declaration they charge that they are the owners of the property and are entitled to recover the full value thereof. They, as plaintiffs in the present action, tendered to the court and jury an issue as to the ownership of the property. This issue was submitted to the jury under proper instructions of the court and under conflicting testimony. The jury returned a verdict against the plaintiffs, and in doing so necessarily found, not only that appellants are not the real owners of the property, but also that the Gulfport & Mississippi Coast Traction Company is the real, true owner.

The real substance of the litigation in both the replevin suit and in the present action has, then, been adjudicated. Unless the trial court committed error in submitting to the jury this issue of ownership, voluntarily tendered by appellants, it follows that the case should be affirmed. The only error discussed in the opinion heretofore rendered, or seriously considered by the court, is the alleged error in refusing to give appellants a peremptory instruction. The grant of this instruction would make the replevin bond determinative of ownership. It cannot be that the execution of a bond in replevin by one of the defendants confers title to personal property. In addition to the various methods known to the law whereby title to personal property may be conferred, appellants would now have

us add the additional method of acquiring title by judicial bond. The bond does not confer title, but at most the mere right of temporary possession. The bond executed by appellants was in favor of the plaintiff in replevin, and so far as this record discloses the codefendant, the Louisville & Nashville Railroad Company, did not have an opportunity to give bond, and was not consulted by Abasi Bros. when the latter elected to give bond.

A word as to the proof in this case would not be amiss. It might be inferred, from what has been said in the first opinion, that the proof of ownership by the Gulfport & Mississippi Coast Traction Company is weak. But the record abundantly shows that this traction Company operated an electric lighting system from Ocean Springs along the beach through the city of Gulfport to Pass Christian, a distance of some thirty-five miles. In transmitting the current the company makes use of a large aluminum wire consisting of seven smaller wires twisted together. It also used an abundant supply of copper wire for transmitting the current from the main line along the service lines into the homes and places of business. The proof tends to show that there were various kinds and sizes of this copper wire, from one-half inch trolley wire to a much smaller service wire. There was also what is referred to as "tie" wires, of lengths suitable for the purpose for which they are used, and that these tie wires and line wires had marks indicating the use to which they had been put, and by which the representative of the Traction Company was enabled to identify them.

The proof tends to show that many miles of the single aluminum wire, made up of the seven small wires twisted together, as also a large amount of copper wire, had been stolen from the Traction Company. Appellees' evidence tended to prove that this aluminum wire amounted to six-thousand pounds, worth from twenty-five to sixty cents a pound, and the copper wire amounted to not less

than five thousand nine hundred pounds, worth from eighteen to twenty cents a pound; that a tropical storm of great violence struck the coast in September, 1915, and blew down a large part of the line of wires of the Traction Company; that thereafter much of this property disappeared, and there was strong suspicion of theft. It appears, further, that appellants are extensive junk dealers engaged in the business of buying and shipping various junk, and the defense relied upon by appellees is that the property in question was stolen property and the purchase of this property by appellants, even without knowledge of the theft would not convey title to them. The chief witness for appellees is one Gorenflo, who constructed the electric lighting system for the Traction Company, and who supervised the lines to such extent that he was familiar with the wires in question. This witness positively identified the property as the property of the Traction Company. It may be conceded that there was no sufficient showing that appellants were themselves guilty of theft, but the proof does clearly show that the Traction Company lost large quantities of wire, and consequently the fact is well proven that some one took possession of this wire without authority of law.

The law is well settled that, if a shipper of property is not the real owner, the carrier may upon demand turn the property over to the true owner and defeat the shipper's claim or suit for failure to deliver by an affirmative showing that it had turned the goods over to the true owner. This was the holding of the supreme court of the United States in *Henry Hentz* v. *Steamship Idaho,* 93 U. S. (3 Otto) 575, 23 L. Ed. 978. In that case the court, among other things, says:

"When the bailee has actually delivered the property to the true owner, having a right to the possession, on his demand, it is a sufficient defense against the claim of the bailor. The decisions are numerous to this effect. *King* v. *Richards,* 6 Wharton [Pa.] 418 [37 Am. Dec. 420];

*Bates* v. *Stanton,* 1 Duer. [8 N. Y. Super. Ct.] 79; *Hardman* v. *Willcock,* 9 Bing. 382; *Biddle* v. *Bond,* 6 Best & S. 225, If it be said that, by accepting the bailment the bailee has estopped himself against questioning the right of his bailor, it may be remarked in answer, that this is assuming what cannot be conceded. Undoubtedly, the contract raises a strong presumption that the bailor is entitled; but it is not true that thereby the bailee conclusively admits the right of the principal. His contract is to do with the property committed to him what his principal has directed—to restore it or to account for it. *Cheeseman* v. *Exall,* 6 Exch. 341. And he does account for it when he has yielded it to the claim of one who has right paramount to that of his bailor. If there be any estoppel, it ceases when the bailment on which it is founded is determined by what is equivalent to an eviction by title paramount; that is, by the reclamation of possession by the true owner. . . . Nor can it be maintained, as has been argued in the present case, that a carrier can excuse himself for failure to deliver to the order of the shipper, only when the goods have been taken from his possession by legal proceedings, or where the shipper has obtained the goods by fraud from the true owner. It is true that, in some cases, fraud of the shipper has appeared; and it has sometimes been thought it is only in such a case, or in a case where legal proceedings have interfered, that the bailee can set up *jus tertii.* There is no substantial reason for the opinion. No matter whether the shipper has obtained the possession he gives to the carrier by fraud practised upon the true owner, or whether he mistakenly supposes he has rights to the property, his relation to his bailee is the same. He cannot confer rights which he does not himself possess; and, if he cannot withhold the

possession from the true owner, one claiming under him cannot. The modern and best considered cases treat as a matter of no importance the question how the bailor acquired the possession he has delivered to his bailee, and adjudge that, if the bailee has delivered the property to one who had the right to it as the true owner, he may defend himself against any claim of his principal. . . . We do not deny the rule that a bailee cannot avail himself of the title of a third person (though that person be the true owner) for the purpose of keeping the property for himself, nor in any case where he has not yielded to the paramount title. If he could, he might keep for himself goods deposited with him, without any pretense of ownership. But if he has performed his legal duty, by delivering the property to its true proprietor at his demand, he is not answerable to the bailor. And there is no difference in this particular between a common carrier and other bailees.''

In the case of *Thomas* v. *Northern Pac. Express Co.*, 73 Minn. 185, 75 N. W. 1120, it is said:

''That a common carrier delivered property in its hands for shipment on demand to a stranger to the shipment, who was the rightful owner, and entitled to the possession thereof, is a good defense against the claim of the bailor for failure to redeliver.''

Presumptively the bailor or shipper is entitled to the property as against the carrier, and the authorities hold also that the bailee cannot himself hold the property by setting up title in a third person. But this rule has no application when the carrier yields to the paramount claim or title of the true owner. In electing to turn over the property to the true owner, appellee Louisville &

Nashville Railroad Company assumed the burden of proving that the Gulfport & Mississippi Coast Traction Company owned the property at the time of the delivery. This burden appellee, by the verdict of the jury, has met. In the case of *Wolfe* v. *Missouri Pac. R. R. Co.,* 97 Mo. 473, 11 S. W. 49, 3 L. R. A. 539, 10 Am. St. Rep. 331, the court says:

"Undoubtedly a carrier, in some circumstances, may de liver to the true owner, instead of to him who gave them into his charge for carriage. Its contract . . . is to carry and deliver, . . . or to account for the goods. It would be a lawful accounting to show that they had been delivered to the real owner upon his demand. This principle is now so well established in the law that the very statement of it will suffice for the purposes of this case. . . . But to justify a delivery to the true owner contrary to or without the orders of the shipper, the carrier assumes the burden of proving the ownership at the time of such delivery."

See, also, as to the general obligation of the carrier in this connection, the following cases: *Young* v. *Alabama R. R. Co.,* 80 Ala. 100; *Western Transportation Co.* v. *Barber,* 56 N. Y. 544; *Rosenfield* v. *Express Co.,* 1 Woods, 131, Fed. Cas. No. 12,060; *Shellenberg* v. *Fremont, E. & M. R. R. Co.,* 45 Neb. 487, 63 N. W. 859, 50 Am. St. Rep. 561; *Lavelle* v. *Belliu,* 121 Mo. App. 442, 97 S. W. 200; *King* v. *Richards,* 6 Whart. (Pa.) 418, 37 Am. Dec. 420; *Wells* v. *Express Co.,* 55 Wis. 23, 11 N. W. 537, 12 N. W. 441, 42 Am. Rep. 695; *Fitch* v. *Newberry,* 1 Doug. (Mich.) 1, 40 Am. Dec. 33; note to *Kohn* v. *Richmond, etc., R. R. Co.,* 34 Am. St. Rep. 726; Note to *Jensen* v. *Eagle Ore Co.,* 33 L. R. A. (N. S.) 681.

In this case the court properly placed the burden of proof on the carrier by the grant of the following instruction:

"The court instructs the jury for the plaintiffs that the burden of proof in this case is on the defendant, the

Louisville & Nashville Railroad Company, to show by a preponderance of the evidence that the property in question belonged and was the property of the Gulfport & Mississippi Coast Traction Company, and if the Louisville & Nashville Railroad Company fails to do this, then the jury shall find for Abasi Bros.''

As stated, the execution of the bond by appellants did not operate to transfer property or convey title. It is always contemplated by this statutory bond that the property should be held temporarily by the principal in the bond to abide the judgment of the court. The present action is not a suit for damages for withholding possession, but the action is bottomed upon the alleged right of ownership in appellants. The issue in the present action finally narrowed down to the one issue of ownership as between the appellant and the Gulfport & Mississippi Coast Traction Company. This issue was voluntarily tendered by appellants themselves. The court is here called upon to deal with realities, and not mere appearances. Upon the issue of ownership appellants have lost. They cannot now be heard to speculate about an effort hereafter to fix liability against them on the bond. The obligee in that bond is the very party to whom the property has been delivered by appellee.

No other assignment merits discussion. The suggestion of error is accordingly sustained, and the judgment of the circuit court affirmed.

*Affirmed.*

ETHRIDGE, J. (dissenting).

I can neither accept the conclusions nor the reasoning of the majority opinion in this case, for, in my opinion, this decision becomes a precedent without a parallel, vicious in principle and injurious in practice—a precedent which enables the common carriers of the country to ride booted and spurred over the rights of the shippers and to treat with contumacy the courts of the

country and to defile justice in her own temple. I challenge the soundness of the decision of the majortiy in this case and shall to the best of my ability meet precedent with precedent, argument with argument, and reason with reason, in the hope that I may enlist the good offices of the members of the bar and the legislature in undoing the mischief that will inevitably flow from this unfortunate decision. The decision in this case goes much further than any of decisions cited in the opinion as the authority for it, and authorizes a carrier to deliver goods to a claimant, who at the time of the delivery had no right of possession, which none of the cases cited does, and, in addition to this, permits collusion between the carrier and the claimant in the institution of a suit, for the purpose of getting the property from the carrier, and permits the claimant in such suit to invoke the aid of the courts, and then to contemptuously disregard the mandate of the law and the commands of its officers. I think every legal conclusion announced in the former report of this case (75 So. 756) is sound, and the facts stated in the opinion at that time were more than favorable to the appellee as to its conduct in this matter.

In brief, the facts of this case are that the appellants, Abasi Bros., were engaged in the business of buying junk in Gulfport, Miss., and as such dealers bought platinum and copper wire in small quantities, zinc, lead, scrap iron, and other waste materials at various dates from sundry persons, keeping a list, as required by law, of the names of the sellers, as given to them by such sellers. It collected about eighteen barrels of this junk and tendered it to the Louisville & Nashville Railroad Company for shipment to Buffalo, New York, taking the usual bill of lading. The goods were shipped out, but ''somewhere in the United States'' between Gulfport and Buffalo the goods were held up and returned to Gulfport under some kind of an agreement between the Louisville & Nashville Railroad Company and W. T.

Stewart, general manager of the Gulf & Ship Island Railroad and also vice president of the Gulfport & Mississippi Coast Traction Company. When the junk was returned to Gulfport, it was consigned to W. T. Stewart, individually; but the agent of the Louisville & Nashville Railroad testified that he understood that it was consigned to Stewart in his capacity as general manager of the Gulf & Ship Island Railroad Company. The Gulfport & Mississippi Coast Traction Company, through its manager, sued out a writ of replevin in the circuit court of Harrison county, making the Louisville & Nashville Railroad, Abasi Bros., and W. T. Stewart parties defendant. The writ was issued to the sheriff of the county, who went to the depot of the Louisville & Nashville Railroad, took the property in possession, made an inventory and return of the property, and left the same in charge of the agent of the railroad company. Abasi Bros., consignors, made a replevin bond, as provided by statute, which was tendered to and accepted by the sheriff, and the sheriff thereupon phoned the agent of the Louisville & Nashville Railroad Company that Abasi Bros., had given the bond and would be down the following morning to get the junk and to deliver it to them. After getting this notice from the sheriff, the agent of the Louisville & Nashville Railroad delivered the goods to W. T. Stewart, testifying that he understood that Stewart was acting on behalf of the Gulf & Ship Island Railroad. The goods were receipted for in the name of W. T. Stewart by two employees of the Gulfport & Mississippi Coast Traction Company, who represented that they had authority from Stewart to sign the receipt and take the goods; the agent of the Louisville & Nashville Railroad testifying that he did not know that these employees were employed by the Gulfport & Mississippi Coast Traction Company. A member of the firm of Abasi Bros., went to the depot the following morning for the goods, but says that the agent of the railroad told him he did not know what became of the goods; but they later found that the railroad receipt

showed delivery to the Gulf & Ship Island Railroad
Company. Suit in trover was instituted by Abasi Bros.
against the Gulf & Ship Island Railroad Company and
the Louisville & Nashville Railroad Company.

There is no pretense in the record that either the Gulf
& Ship Island Railroad Company or W. T. Stewart had
any right, title, or interest in this junk. It appears, how-
ever, that Stewart, or the agent of the Traction Company
took this property delivered to them by the Louisville
& Nashville and delivered some of it to the Gulfport
& Mississippi Coast Traction Company, some of it to the
Telephone Company, and some of it to the Great South-
ern Hotel Company. It appears in testimony that the
superintendent of the Louisville & Nashville, through an
arrangement with Stewart and the manager of the Trac-
tion Company, with knowledge of the fact that the appel-
lants had given bond and with knowledge of the fact that
Stewart and the Louisville & Nashville were defendants
in the suit of replevin, and that the Gulfport & Missis-
sippi Coast Traction Company was plaintiff in such suit,
and in violation of the directions of the sheriff, turned
this property over to Stewart, who made the disposition
above mentioned. In the suit for trover the Louisville
and the Louisville & Nashville were defendants in the
suit of replevin, and that the Gulfport & Mississippi
Coast Traction Company was plaintiff in such suit, and
in violation of the directions of the sheriff, turned this
property over to Stewart, who made the disposition
above mentioned. In the suit for trover the Louisville
& Nashville defended on the theory that the property was
the property of the Gulfport & Mississippi Coast Traction
Company, and that it was not liable. It made no pretense
to any right in itself to the property, but the testimony
shows conclusively that its possession was that of bailee
for the appellans, Abasi Bros. On the trial of the trover
suit, from which this appeal is taken, the manager of the
Traction Company, to show title, testified that the wires
of the Traction Company along the coast for a distance

of thirty-five miles were blown down and the wire stolen,
and that the platinum wire was of the kind that was used
on the poles, and that no other company on the coast used
such wire. He testified, further, that the kind of copper
wire involved in this suit was used by his company, by
the company at Pascagoula, Hattiesburg, Bay St. Louis,
and Jackson. There was no direct proof that any of the
persons who sold to the appellants had stolen this wire,
and there was no sufficient proof to prove ownership in
the Traction Company of the property. So, then the ap-
pellants were the purchasers of the junk in question,
having paid value for it, with no knowledge of its being
stolen, so far as the proof shows. They were in posses-
sion through their bailee, the Louisville & Nashville Rail-
road Company, of the property, and were entitled to
the possession until at least the case was decided in the
replevin suit.

Section 4222 of the Code of 1906 reads as follows:

"Property Restored to Defendant on Bond.—If the
defendant shall, within two days from the seizure of the
property, or at any time afterwards, and while it is in
the possession of the officer, enter into  bond with suffi-
cient sureties, to be approved by the officer, payable to
the plaintiff, in double the value of the property, condi-
tioned that it shall be forthcoming to satisfy the judg-
ment of the court, the property shall be restored to him."

Section 4233 of the Code provides that on the trial
of a replevin suit, where the defendant has given bond,
and the plaintiff prevails in the suit, the judgment shall
be that the defendant and the sureties on his bond re-
store the property to the plaintiff, if to be had, or pay him
the value thereof, or of his interest therein, as assessed
by the verdict of the jury.  The section in full reads as
follows:

"Judgment for Plaintiff.— If the plaintiff recover and
the defendant has given bond for the  property, the
judgment shall be against the defendant and the sureties
on his bond, that they restore the property to the plain-

tiff, if to be had, or pay him the value thereof or of his interest therein, if a limited one, as assessed by the verdict of the jury, and that they pay to the plaintiff such damages as shall have been assessed by the jury for the wrongful taking and detention, or for the wrongful detention thereof; but if the plaintiff has given bond for the property, the judgment shall be that he retain it, and that he recover of the defendant the damages assessed for the wrongful taking and detention, or wrongful detention, as the case may be.  If the plaintiff recover judgment by default, he may have a writ of inquiry to assess the value of the property or the damages for the wrongful taking and detention, or wrongful detention, or both, as the case may be; and judgement shall be rendered therein as upon an issue found for him.''

The supreme court, in construing this statute in the case of *Bond* v. *Griffin,* 74 Miss. 599, 22 So. 187, held that under this section the judgment should be in the alternative for the property or its value as found by the jury, and that the defendant in such case can elect to pay the value and retain the property, reversing the judgment in that case, which merely provided for the return of the property without assessing the value thereof. So, under this statute, the appellants had the right of possession until the lawsuit was decided, and then, if decided against them, had the right to pay such value as the jury assessed as being the value of the property and keep the property.  It is clear, then, that the property was the property of the appellants at the time the Louisville & Nashville turned it over to Stewart, subject only to the restriction that, if the judgment in the replevin suit went against Abasi Bros., they should pay its value to the plaintiff as assessed by the jury.  It is well settled that possession or a qualified right is sufficient to enable a party to maintain tresspass or trover against any one except the real owner.  38 Cyc. 2044; *Harris* v. *Newman,* 5 How. 654; 28 Amer. & Eng. Encl. of Law, 674 and 675; *Heard* v. *James,* 49 Miss. 236; *Al-*

*liance Trust Co.* v. *Nettleton Hardwood Co.,* 74 Miss. 584, 21 So. 396, 36 L. R. A. 155, 60 Am. St. Rep. 531; *Barker* v. *Lewis Storage & Transfer Co.,* 79 Conn. 342, 65 Atl. 143, 118 Am. St. Rep. 141. It is clear, therefore, that the appellants had a right to institute conversion against the Louisville & Nashville Railroad under the facts in this case.

Appellees cite the case note to *Jensen* v. *Eagle Ore Co.,* 33 L. R. A. (N. S.) 681, for authority for the position that the judgment should be affirmed. In this case I quote from the headnote as follows: "A bailee cannot relieve himself from the duty of redelivering the property to the bailor, by showing that at some unknown time it had been stolen by an unknown thief from an undisclosed owner, and that the bailor by reasonable inquiry could have ascertained that fact, and that the bailee had purchased the property from one claiming to be the agent of such owner."

Taking the authorities in this case, and in the case note appended thereto, and comparing them carefully with the present case, will show that none of the authorities sustain the position of the court, for in none of them has it appeared that the true owner was not entitled to the possession at the time of the delivery, and none of them holds that a carrier can connive with an alleged owner, and defend its failure to deliver where such connivance appears. On the contrary, all the authorities that I have seen that treat of the matter hold that the alleged true owner must have the right of immediate possession, and all of them hold (that deal with this matter) that, wherever the carrier has connived with the claimant, it could not defend its delivery under such facts. The act of the carrier must always be in good faith, and without fraud or connivance. At page 687 of the L. R. A. report (33 L. R. A. [N. S.], *supra*) the following is laid down:

"It constitutes a wrongful conversion of the bailed property for the bailee to surrender it to, or permit a third person to obtain possession of it, where such per-

son is not the true owner. And it is no defense to the bailee, in an action against him by the bailor for such wrongful conversion, that the title to the bailee property at the time of the bailment was in fact in another" — citing *Estes* v. *Boothe,* 20 Ark. 583; *Riddle* v. *Blair,* 163 Ala. 314, 51 So. 14; *Roberts* v. *Stuyvesant Safe Deposit Co.,* 123 N. Y. 57, 25 N. E. 294, 9 L. R. A. 438, 20 Am St. Rep. 718.

Again (33 L. R.A.[N. S.] on page 695), the following is laid down, which is applicable to this case, to wit:

"A bailee cannot hunt up a paramount claimant, and then, when called upon by the bailor for the property, answer that he is a bailee of such claimant. Thus a husband, who becomes the bailee of property, cannot defend an action by the bailor, on the ground that his wife is the true owner of the property and has asserted a claim thereto, and that he is holding the same for her, and he having knowledge of the wife's interest in the property at the time of the contract of bailment." *Pulliam* v. *Burlingame,* 81 Mo. 111, 51 Am. Rep. 229. See, also, *Shelbury* v. *Scotsford,* Yelv. 23; *Marvin* v. *Ellwood,* 11 Paige, 365.

Again, under the heading "Where the Bailee Instigates Commencement of Action by Adverse Claimant," I quote the following from said note:

"In order that the bailee of property be entitled to show the seizure thereof upon legal process as a defense to an action by the bailor, the seizure must not have been brought about by any fraud or connivance of the bailee" —citing *The M. M. Chase* (D. C.) 37 Fed. 708. See, also, *Walter Wood Harvester Co.* v. *Dobry,* 59 Neb. 590, 81 N. W. 611.

In the case of *Stiles* v. *Davis,* 1 Black, 101, 17 L. Ed. 33, from the opinion I quote as follows:

"After the seizure of the goods by the sheriff, under the attachment, they were in the custody of the law, and the defendant could not comply with the demand of the plaintiffs without a breach of it, even admitting the

goods to have been, at the time, in his actual possession. The case, however, shows that they were in the possession of the sheriff's officer or agent, and continued there until disposed of under the judgment upon the attachment.''

The case of *Hentz* v. *Steamship Co.,* 93 U. S. 575, 23 L. Ed. 978, cited in the majority opinion as sustaining their position, distinctly recognized the fact that the alleged true owner must have the right of immediate possession. On page 979 of the Lawyers' Edition I quote from the opinion as follows: ''And so, when the bailee has actually delivered the property to the true owner, having a right to the possession, on his demand, it is a sufficient defense against the claim of the bailor.''

The decisions are numerous to this effect. In the case of *Wolfe* v. *Missouri Pac. R. R. Co.,* 97 Mo. 473, 11 S. W. 49, 3 L. R. A. 539, 10 Am. St. Rep. 331, cited also in the majority opinion, I quote from the syllabus as follows:

''Common Carrier— Delivery.—To justify delivery to the true owner contrary to or without the shipper's orders the carrier has the burden of proving the ownership and immediate right of possession in the person to whom such delivery is made.''

This case also holds that conversion lies against the carrier for a wrongful delivery of the goods. It also holds that, when a person places himself in connection with the telephone system through an instrument in his office, he thereby invites communication in relation to his business through that channel. Conversations so held are as admissible in evidence as personal interviews by a customer with an unknown clerk in charge of an ordinary shop would be in relation to the business then carrie on, and the fact that the voice at the telephone was not identified does not render the conversation inadmissible. In the present case the agent of the Louisville & Nashville admits that the sheriff gave it notice that the appellants had given the replevin bond and were entitled to the property.

The majority also cite the case of *Kohn* v. *Richmond & Danville R. R. Co.*, 37 S. C. 1, 16 S. E. 376, 24 L. R. A. 100, 34 Am. St. Rep. 726, or rather cite the case note appended to this case. The case itself holds that the carrier cannot deliver goods consigned to it for transportation to one claiming to be the true owner, unless such claimant shall accompany such demand by legal process. There are numerous authorities that support the South Carolina court in this proposition, though the greater number of courts that have passed upon the question have decided that the carrier could, at its peril, deliver to the true owner where the true owner had both the title and the right of immediate possession. This proposition has not heretofore been decided by the courts of Mississippi. It would seem that the better reasoning is with the South Carolina doctrine, requiring some kind of legal process before the carrier would be justified in turning over property consigned to it for transportation. This is especially true, when we consider the importance to the business world of having goods promptly shipped and speedily delivered to the consignee. In many cases a man's business would be destroyed if he should fail to receive consignments shipped to him, necessary for carrying on his business or supplying his trade. There is nothing unreasonable in requiring the person claiming goods in the custody of the common carrier to resort to legal process. Such step protects all interests and seems would do no harm to any one. It may be true that in special cases that hardship would result in requiring legal process where there might be some difficulty in obtaining it. The doctrine that the carrier can deliver without legal process had its origin in that state that is described in the phrase that "hard cases make bad precedents."

I would not dissent, however, from my Brethren, if the decision involved here was on facts analogous to the cases which they cite to sustain their contention.

But I do insist that, before a carrier is authorized to deliver goods in its possession to a party claiming them, the claimant must not only have legal title, but must have the right of immediate possession. There is no case anywhere, so far as I know and so far as has been pointed out to us, that holds that a party who has invoked the aid of the court to assist him in securing his rights can disregard the right created and recognized by the law which he invokes.

In the next place, the evidence does not warrant the verdict for the Louisville & Nashville even under its theory of the case because there is a failure to prove that the title was in the party to whom the delivery was made, or to the party who, it is claimed, is now in possession—the Traction Company. The most that the Traction Company proved is that it used wire of the exact kind that a portion of the wire in this suit was, and that, so far as its managers knew, there was no other company south of Atlanta that used such wire. The majority opinion says the witness positively identified the wire. It is true the witness makes a general statement, but it appears from the witness' testimony that the wire of the kind he uses is used commercially, and that they are not the sole owners or patentees of any such wire. When he states that there is no such wire used south of Atlanta, manifestly he is attempting to bridge a gap by recklessly swearing what in the very nature of things, he could not know as a definite fact. I concede that he was a willing witness, but Gulfport is a port to which numerous vessels from all parts of the world come, and it appears in testimony that at least some of this wire was bought from seagoing vessels. The court knows judicially that there are many cities in the world, and reasonably close to Gulfport, using such wires as used by traction companies, and that scrap and waste wire of this kind is bought and sold in the markets. The fact that the Traction Company had wire stolen

from it does not even tend to prove that the wire in suit was a part of such wire, and, in addition to this, a portion of the goods delivered to Stewart was turned over to the Great Southern Hotel . Company, and there is absolutely no proof in the record that such company was the owner of such wire; the only proof being tendered was a court proceeding which the trial judge excluded rightfully. There is no proof whatever that the material turned over to the Telephone Com- pany belonged to the Telephone Company, nor is there any proof of its character, nature, and value. One witness for the Railroad Company tried to testify that he knew of no such persons as some of the people named in the list of sellers kept by the junk dealer, but when this witness was put to the test he could not give the names of many persons called to his attention on cross-examination, many of whom were engaged in busi- ness in Gulfport. Giving to the testimony introduced by the Railroad Company, all that could possibly be in- ferred from it under legal rules, the greatest credulity of the logical mind could not be satisfied from this proof of the ownership of this property, or that it was stolen from the Traction Company.

The court instructed for the defendant as follows:

"The court instructs the jury that after the sheriff re- leased his levy he had no further right to control the ac- tion of the Louisville & Nashville Railroad Company in reference to the wire, and if he did undertake to do so the Louisville & Nashville Railroad Company had a per- fect right to disregard any  instruction which he gave in reference to the further disposition of the wire."

This instruction is fatally erroneous. The sheriff had levied upon the goods, and defendant in the replevin suit had given bond, and it was the sheriff's duty to turn the property over to Abasi Bros. under this bond. It was then the power and was the duty of the sheriff to retake this property, after taking bond for it, and deliver it to the appellants. The Louisville & Nashville had no

right to disregard the sheriff's instructions. The property was in the custody of the sheriff, in legal contemplation, until it was actually delivered to the appellant.

Again, the court instructed the jury generally that, if the property in question was the property of the Gulfport & Mississippi Coast Traction Company, then the Louisville & Nashville Railroad Company had a right to turn it over to the Traction Company, regardless of any instructions from the sheriff. This instruction is erroneous for two reasons: First, it does not embrace the hypothesis that the Traction Company must be entitled to its immediate possession, and, under the law, it is conceded that the right of possession was with the appellant. In the second place, the property was in *custodia legis* until it was delivered to Abasi Bros., and the Railroad Company had no right to disregard this fact. In addition to this, the property was not delivered by the Louisville & Nashville to the Traction Company, but to W. T. Stewart, and the instruction assumes as a fact that it was delivered to the Traction Company, and was misleading for this reason.

The majority opinion says:

"Abasi Bros., then, did not seek an order of the circuit court having jurisdiction of the replevin in aid of their right of possession under the bond."

If, by this language the majority means that the appellants were limited to seeking the aid of the circuit court in having possession restored to them under the bond, I do not agree with them; because in law there is such a thing as an election of remedies, and the appellants had a perfect right to sue in trover, instead of trying to hunt up' this property taken from them unlawfully. If the majority mean by this language that a contempt proceeding should have been taken against the agents of the Louisville & Nashville and Stewart and the agents of the Traction Company, I heartily agree with them, because I think the process of the court should have been protected by contempt proceedings,

and these parties should have had the benefit of the "refining influences of the county jail" until they were taught that even powerful corporations have no right to trifle with the rights of the humblest citizen and the process of the court. But jail  sentences, like harsh words, "butter no parsnips," and, while it might have been highly satisfactory to the appellants to have seen the circuit court protect its process, they were vitally interested in getting value for their property.

Again, the majority opinion says:

"The real substance of the litigation in both the replevin suit and in the present action has, then, been adjudicated. Unless the trial court committed error in submitting to the jury this issue of ownership, voluntarily tendered by appellants, it follows that the case should be affrmed."

It is difficult for me to comprehend the legal reasoning that prompts my Brethren to make this announcement. The party in the replevin suit was not a party to this suit. Neither was there any issue between the parties in this suit in the replevin suit. I cannot see how the issue between the appellants and the Traction Company in the replevin suit is adjudicated in a suit to which the Traction Company is not a party. Again, I cannot see how the issues in this suit can affect the issues in the other suit, when there was no issue in the other suit between the parties to this suit. I have always understood that to constitute *res adjudicata* there must not only be the same issues, but the issues must be between the same parties. *Creegan* v. *Hyman,* 93 Miss. 481, 46 So. 952; 24 Amer. & Eng. Enc. of L. 778; 9 Enc. of Pl. & Pr. 622, 626.

Again, the court, speaking of the former opinion, holding that the peremptory instruction should have been granted to the appellants, says:

"The grant of this instruction would make the replevin bond determinative of ownership. It cannot be that

the execution of a bond in replevin by one of the defendants confers title to personal property. In addition to the various methods known to the law whereby title to personal property may be conferred, appellants would now have us add the additional method of acquiring title by judicial bond. The bond does not confer title, but at most the mere right of temporary possession.''

The plaintiff in the suit below had acquired this property by purchase. It was in his possession, and possession is satisfactory title to maintain a suit against any one who has no superior title to possession. The possession being in Abasi Bros., and the execution of the bond retaining the possession and giving, in addition, to them the additional right to pay the value of the property, makes the title perfect. It is a recognition and the confirmation of the possessory title already possessed by the appellants, through their bailee, the Railroad Company.

In conclusion, I desire to say that practically all the authorities cited with elaboration in the opinion were before the court when the former opinion was rendered. The only thing that I can see that prompts the court to change its opinion is the suggestion pressed upon us that the goods were stolen goods and that the appellants were buyers of stolen property. In my opinion, the record does not sufficiently prove that this is true, and we ought not to let a charge of misconduct or of bad character prejudice a litigant's right in the absence of sufficient proof. In *Hampton* v. *State,* 88 Miss. 257, 40 So. 545, 117 Am. St. Rep. 740, this court said:

''Mulattoes, negroes, Maylays, whites, millionaires, paupers, princes, and kings, in the courts of Mississippi, are on precisely the same exactly equal footing.''

I wish the court had added, ''Railroads, traction companies, and junk dealers.'' Has the court thrown down its lofty ideals of the equality of the litigants?

Cook, P J. (dissenting).

It seems quite clear to me that Brother ETHRIDGE has about sized up the law applicable to the original replevin suit, and the court would no doubt require the Gulfport & Mississippi Traction Company to deliver the property to Abasi Bros. before the beginning of the trial, and in default thereof a judgment would be entered for Abasi Bros. The Traction Company invoked the aid of the court to determine its alleged right to the possession of the property in question, and immediately ignored the statute it had invoked. Abasi Bros. thereupon filed the present suit for conversion, and it seems to me that the Railroad Company should not be permitted to defend upon the theory that the Traction Company was the owner of the property. The Traction Company violated the law it had invoked, and it is my judgment that they had no standing in a court of law. The fact that it gained possession by fraud foreclosed its defense to this suit.

It is also apparent to me that, under the facts appearing of record in this case, the Traction Company was not entitled to the immediate possession of the property, because the statute expressly required that the property should be restored to Abasi Bros. when its bond had been approved by the officer executing the writ of replevin. In other words, by its terms the statute gave Abasi Bros. the right to the immediate possession of the property, and this right cannot be defeated by evidence showing that the traction Company was the true owner of the property. If, upon a proper trial of the replevin suit, it should appear that the property was the property of the Traction Company, then the right of possession would yield to the title; but that issue is not and cannot be involved in this suit, without a repeal of the statutes on replevin.