**NORTH AMERICAN VAN LINES, INC.**

v.

**Bernard HELLER and Mrs. Doris Heller Rider.**

Civ. A. No. 9958.

United States District Court
W. D. Louisiana,
Shreveport Division.

July 16, 1965.

Pike Hall, Jr., Wilkinson, Lewis, Woods & Carmody, Shreveport, La., for plaintiff.

Kenneth Rigby, Love, Rigby & Donovan, Shreveport, La., for defendant Bernard Heller.

BEN C. DAWKINS, Jr., Chief Judge.

North American Van Lines, Inc., (North American), instituted this interpleader action under the authority of 49 U.S.C. § 97[1] against Bernard Heller (Heller), a citizen of Louisiana, and Mrs. Doris Heller Rider, a citizen of California. Jurisdiction in this Court is based upon 28 U.S.C. § 1335, the amount of the claim being more than $500, with proper bond filed in the amount of $5000.

Plaintiff, a common carrier, holds certain personal property, alleged to be owned by one or the other or both of the defendants, against which it claims a lien for its transportation and storage fee. Heller responded with a cross-claim against Mrs. Rider, his former wife, for possession of the household furnishings

---

1. "If more than one person claim the title or possession of goods, the carrier may require all known claimants to interplead, either as a defense to an action brought against him for nondelivery of the goods or as an original suit, whichever is appropriate. Aug. 29, 1916, c. 415, § 17, 39 Stat. 541."

and other personal effects [2] and a counterclaim against the carrier for the value of the personal belongings, damages for loss of use, and general damages. [3]

Defendants, although experiencing marital difficulties, were still married when the facts giving rise to this litigation arose. They owned a family home in Shreveport, which was furnished with valuable furniture and other personal belongings. They began to live apart in early 1962, with Mrs. Heller (now Mrs. Rider) and their three minor children continuing to live in the home. Sometime in July, 1962, the then Mrs. Heller and the children purportedly went on a vacation in Texas.

Instead of going there, however, Mrs. Heller went to Reno, Nevada, where she established residence for a Nevada divorce from Heller, which she obtained September 28, 1962.

While in Reno, Mrs. Heller contacted North American's local agent July 24th and instructed him to remove all furniture from the home in Shreveport, and transport it to Oakland, California, C.O.D., to await her further instructions. On authority of a letter signed by Mrs. Heller and a key to the home which she delivered, the Shreveport agent of plaintiff, A. W. Dunn Transfer & Storage Co., entered the home, packed the furnishings, including a built-in refrigerator, and shipped them by motor van August 2, 1962.

During July, 1962, Heller made occasional visits to the home to see to its maintenance. Friday, August 3, 1962, he found the home to be vacant—stripped of all its furnishings. After considerable searching and inquiry, he ascertained that the furniture had been picked up by plaintiff's local agent and shipped by van from Shreveport the day before, on the asserted authority of Mrs. Heller.

In the early afternoon of Friday, August 3rd, Heller contacted W. O. Gilbert, local manager of A. W. Dunn Transfer & Storage Co. and informed him of Mrs. Heller's lack of authority to order the shipment. Shortly thereafter, Gilbert telephoned this information to plaintiff's District Dispatcher, John Bradford, in Joplin, Missouri. According to E. T. Javitt, plaintiff's General Traffic Manager, Bradford had direct responsibility for and supervision of the shipment of the Heller furniture.

Also during the afternoon of Friday, August 3rd, Heller himself called Richard Helstrom in North American's home office at Fort Wayne, Indiana. Helstrom was in charge of insurance and cargo claims. He suggested to Heller that he call Bradford in Joplin to try to locate the shipment and stop it. When contacted, Bradford advised Heller that he was aware of Heller's claim as a result of the call from Gilbert. Thus by the middle of the afternoon of Friday, August 3rd, North American was fully aware of Heller's adverse claim of possession, that information having been communicated to both officers and agents of the carrier whose duties actually included the ability to take action upon the information.[4] Specifically, Bradford was in a position to act to stop the shipment, since he had confirmed, reliable information as to

2. After process was duly served on this cross-claim, and Mrs. Rider having failed to plead or otherwise defend, a judgment decreeing that Heller is exclusively entitled to possession of the household furnishings and personal effects, as against Mrs. Rider, was signed February 8, 1965.

3. Plaintiff's motion to dismiss defendant's counterclaim for failure to state a claim upon which relief can be granted was referred to the merits, and is now OVERRULED.

4. Plaintiff's General Traffic Manager, E. T. Javitt, testified that plaintiff employs counsel in its home office at Fort Wayne. As plaintiff does substantial business in Louisiana, it must be presumed that it is conversant with the Louisiana law of community property, specifically, that during the existence of the marriage the husband, as head and master of the community, is in legal possession of all the community property. La. Civil Code art. 2404 (1870). Thus plaintiff should have been fully aware of the importance of investigating Heller's adverse claim of possession.

Heller's adverse claim of possession. Heller had done everything he could have done to protect his rights.

The van of furniture arrived in Dallas at 8:00 a.m., August 3, 1962, driven by one Seldon Camus. Camus was alone on the trip from Shreveport to Dallas, and, while in Dallas, picked up driver Elmer Shovan. The evidence does not show whether an additional load was picked up in Dallas, but the van was there for nearly 12 hours, departing Dallas at 7:30 p.m., August 3rd. Thus the van was in that city for several hours after plaintiff had information as to Heller's claim of possession. These facts were well known to plaintiff, and there was no logical excuse for it not having taken necessary action to stop the shipment then and there.

On the basis of these facts, and perhaps a little out of order, we consider first plaintiff's claim for a transportation and storage fee. North American claims it is entitled to transportation charges in the sum of $1,869.19, which include: transportation, Shreveport, Louisiana, to Oakland, California, $1,421.97; insurance, $62.50; packing charges, $356.25; extra labor, $17.25; and appliance service, $11.22. It also claims a storage fee of $60.00 per month.

█ As will be further developed in discussion of Heller's counterclaim, we hold that plaintiff is entitled only to its transportation charge from Shreveport to Dallas, its miscellaneous charges, and storage for a reasonable time as deter-mined under 49 U.S.C. § 98.[5] Considering the over-all charge of $1,484.47 for transportation and insurance for the 1,939 mile trip from Shreveport to Oakland, we find $146.84 to be adequate payment for the 185 mile trip from Shreveport to Dallas. The total compensation we thus find to be due for transportation, packing, etc., is $531.56. We further find that a period of one month was a reasonable time for plaintiff to have brought legal proceedings or otherwise complied with § 98. Thus the total amount due plaintiff for transportation, miscellaneous expense and storage is $591.56.[6]

Proceeding now to Heller's counterclaim, it is a universal principle of law that every person is bound to repair the damage which his fault has caused.[7] If one acts toward another in a manner which falls below the standard of care required by law under the circumstances, he has breached his duty, and is responsible for his negligence. If this negligence has in fact caused harm to the other person, then the tort feasor is liable for the resultant loss.

█ By 49 U.S.C. §§ 89 and 90 Congress intended to place upon a carrier in interstate commerce the duty to act with reasonable diligence to stop a shipment of goods when information as to the claim of a person lawfully entitled to the possession of the goods comes to the responsible agent of the carrier. We thus find that plaintiff[8] had the duty to stop the

5. *"Reasonable time for procedure allowed in case of adverse claim*
"If some one other than the consignee or the person in possession of the bill has a claim to the title or possession of the goods, and the carrier has information of such claim, the carrier shall be excused from liability for refusing to deliver the goods, either to the consignee or person in possession of the bill or to the adverse claimant, until the carrier has had a reasonable time to ascertain the validity of the adverse claim or to bring legal proceedings to compel all claimants to interplead. Aug. 29, 1916, c. 415, § 18, 39 Stat. 541."

6. Disposition of defendant's counterclaim makes it unnecessary for this Court to decide whether a lien for its transportation and storage fee exists upon this property in favor of plaintiff.

7. La. Civil Code art. 2315 (1870).

8. Plaintiff argues that it owed no duty to divert the shipment as it could not do so without subjecting itself to damages for non-delivery to the named consignee. It also argues from 49 U.S.C. § 99 that it could not set up Heller's right to possession as a defense to Mrs. Heller's action for delivery. These two arguments overlook the provisions of § 98 which allow

Heller shipment in Dallas, in the late afternoon or early evening of August 3rd.

This is made abundantly clear by 49 U.S.C. §§ 90 and 98, which establish the standard of care set up by Congress as that of reasonable diligence, under the circumstances, to stop the shipment and investigate the validity of the adverse claim within a reasonable time.

■ As a matter of fact plaintiff had a period of at least several hours on August 3rd in which to stop the shipment in Dallas, while the van was still there, picking up its second driver. Even though the burden was on plaintiff,[9] it did not produce the testimony of Bradford to show the facts surrounding plaintiff's failure to stop the van. Because of this lack of testimony, it must be presumed that Bradford's testimony would have been adverse to plaintiff;[10] and his indifference to the seriousness of Heller's claim is inexcusable. It is manifestly clear that plaintiff deviated from the established standard of care, its failure to act amounting to negligence.

North American's negligence in failing to delay the shipment and investigate Heller's claim, ascertain its validity, and deliver the goods upon demand has caused damage to Heller as surely as if the carrier had actually delivered the goods to a person not entitled to them.

In Slavenburg Corp. v. Howard Sober, Inc.,[11] the plaintiff had a security interest in certain automobiles in the hands of the defendant, a carrier. Defendant was to receive partial payment of the price from the consignee before release of the automobiles to him, which he failed to do. Not being paid, plaintiff asserted his security interest and demanded possession of the automobiles from the defendant. When this was refused, plaintiff brought an action for damages. It was held that plaintiff had the right to possession and that defendant's release of the automobiles was wrongful, plaintiff recovering a judgment in the amount of the actual value of the automobiles at the time of the wrong.

■■ Applying the rationale of that case and the other authorities cited to this one, it is seen that North American's refusal to deliver the furniture and personal belongings upon demand (after a reasonable time for investigation and determination of the validity of Heller's claim) has caused Heller damages which are recoverable.[12] The measure of such damage is the actual value of the goods at

the carrier a reasonable time for investigation as to the validity of any adverse claim to possession, without liability for delay. Moreover, neither has application to the rule that makes it the carrier's duty to deliver to the person legally entitled to possession upon demand. See Abasi Bros. v. Louisville & N. R. Co., 115 Miss. 803, 76 So. 665, L.R.A.1918B, 652 (1917). See also 13 Am.Jur. 2d, Carriers § 422.

9. See 49 U.S.C. § 98. See also Davis v. Fruita Mercantile Co., 74 Colo. 247, 220 P. 983 (1923).

10. See Tendler v. Jaffe, 203 F.2d 14, 92 App.D.C. 2 (1953), cert. denied, 346 U.S. 817, 74 S.Ct. 29, 98 L.Ed. 344; 8 Cyclopedia of Federal Procedure § 26.273.

11. 214 F.Supp. 338 (D.C.N.Y.1963). In Hines v. Chaddick, 63 S.W.2d 263 (Tex. Civ.App.1933), after learning that the consignee would not accept the delivery, the shipper requested a stoppage *in tran-*

*situ* of the carrier. The goods were temporarily in the hands of a third person for processing. The Court held that "the carrier was not justified in shipping the cotton, was guilty of a breach of duty in failing to stop its transportation," and that the shipper was harmed in the amount determined by the trial court, thus affirming an award of damages. See also In re Taub, 7 F.2d 447 (2d Cir. 1925); Getchell v. Northern P. Ry. Co., 110 Wash. 66, 187 P. 707 (1920).

12. Heller has suggested that he would accept delivery of the furniture and personal belongings in Shreveport. While it is true that the carrier has a duty to return the goods when a C.O.D. shipment is refused by the consignee (See Alice v. Taca International Airlines, S.A., 243 La. 97, 141 So.2d 829 (1962)), we believe there is a firmer base in law for an award of damages, as in the case of wrongful delivery. See footnote 9, supra.

the time and place it occurred.[13] The evidence shows that the purchase price of the personal property was $11,331.00. Heller's uncontested valuation of it as of August 3, 1962, is $10,000.00, which amount we adopt as the then actual value of the property.

 Neither counsel nor independent research has uncovered authority for an award of damages for loss of use or general damages in the factual situation here presented. However, applying basic principles of equity we think it is clear that Heller is entitled to an award for these items, which we hereby fix at $1000.00.

In view of the above disposition of all claims, let an appropriate decree be prepared in favor of Heller against North American in the amount of $10,408.44, with legal interest from judicial demand, plus all costs.

13. Orange Nat'l Bank v. Southern Pac. Co., 162 La. 223, 110 So. 329 (1926).