(110 So. 329)

No. 27558.

## ORANGE NAT. BANK v. SOUTHERN PAC. CO.

(Oct. 5, 1926. Rehearing Denied Nov. 2, 1926.)

*(Syllabus by Editorial Staff.)*

**1. Carriers ☞83.**

Under Act Cong. Aug. 29, 1916, §§ 9, 10, 14 (U. S. Comp. St. §§ 8604e, 8604ee, 8604gg), in event of loss of order bill of lading carrier could only deliver interstate shipment on order of court and execution of bond.

**2. Carriers ☞83.**

Carrier, which delivered interstate shipment made under order bill of lading to one who was not holder of bill, *held* liable.

**3. Carriers ☞94(4).**

Measure of damages for conversion by carrier is value of goods at time and place of conversion less freight charges.

**4. Damages ☞188(1).**

To warrant reduction of damages recoverable against carrier for conversion of goods by reason of their deterioration, evidence thereof should establish clearly and convincingly that goods had deteriorated.

**5. Evidence ☞571(6).**

Evidence of chemist as to condition of canned milk, based upon description of other witnesses, *held* entitled to no greater weight than theirs.

**6. Damages ☞188(1).**

In action against carrier to recover value of milk misdelivered, evidence in mitigation of damages *held* insufficient to establish clearly and convincingly that milk had deteriorated.

**7. Damages ☞62(3)—That plaintiff made no effort to obtain misdelivered shipment from carrier until many months after misdelivery held not to mitigate damages.**

In action against carrier to recover value of milk misdelivered, that plaintiff made no attempt to obtain shipment from carrier until many months after misdelivery *held* not to mitigate damages, since plaintiff's cause of action arose from moment defendant placed goods beyond power of delivery.

**8. Carriers ☞94(4).**

Interest on amount recovered from carrier for conversion of shipment should have been allowed from date of conversion.

Appeal from Civil District Court, Parish of Orleans; William H. Byrnes, Jr., Judge.

Suit by the Orange National Bank against the Southern Pacific Company. From judgment for plaintiff, defendant appeals. Judgment amended and affirmed.

Denegre, Leovy & Chaffe, of New Orleans, for appellant.

Dart & Dart and Louis C. Guidry, all of New Orleans, for appellee.

OVERTON, J. The Rogers Milk Products Company, Inc., shipped, on January 24, 1923, from Pulaski, N. Y., to New Orleans, La., 650 cases of Rogers brand sweetened condensed milk to its own order, notify Goodman & Beer, Inc., and transferred the bill of lading with draft attached; the plaintiff herein being the present holder of the bill of lading and draft. The initial carrier of the goods was the New York Central Railroad Company, and the delivering carrier was the defendant herein, the Southern Pacific Company. The shipment arrived at New Orleans on February 21, 1923, on board one of defendant's steamships, and upon arrival was unloaded on the docks, and Goodman & Beer, Inc., notified of the arrival. The shipment remained on the docks for about two weeks, no one presenting the bill of lading, when, under the rules of the dock board, it became necessary to remove the goods to a licensed warehouse. Goodman & Beer, Inc., had the shipment removed to its warehouse. The shipment was held by that company, apparently for the account of defendant, until March 22, 1923, when the company, not being able to present the bill of lading, gave defendant an indemnity bond for the goods, and took possession of them, and held them, as owner. Shortly thereafter Goodman & Beer

reached the conclusion that something was wrong with the shipment, since, according to the version of an official and of an employee of the company, some of the cases, containing the cans of milk, were bulging. Examinations were then made by the official and the employee of Goodman & Beer, who had noticed the bulging, and the conclusion was reached that the bulging was due to the formation of gas in the milk, caused by deterioration, brought about, long before deterioration should have been expected, by faulty manufacture. Goodman & Beer then attempted to sell the milk; and, after some effort in this direction, sold it, in the latter part of May, 1923, to a person named Groetch, whose given name is not disclosed by the record, for $2 a case, or $1,300 for the entire shipment. The milk, if properly manufactured and in good condition, was worth on the market here $3,257.02 above the freight charges.

This suit is brought by the holder of the bill of lading against the Southern Pacific Company to recover the value of the milk, above the freight charges, which is alleged to be the aforesaid sum of $3,257.02. This suit is based upon the theory that defendant has failed to deliver the goods and has placed it beyond its power to do so by delivering them to a third person without the presentation of the bill of lading therefor.

[1, 2] The shipment was an interstate shipment, and having been made under an order bill of lading, defendant should not have delivered it except upon presentation and surrender of the bill of lading by the lawful holder thereof, and in the event of the loss or destruction of the bill of lading, then only upon an order of court and the execution of a proper bond. Sections 9, 10, and 14 of Act Aug. 29, 1916, ch. 415, 39 Stat. L. 540, Fed. Stat. Ann. 1918 Supp. pp. 74 and 75 (U. S. Comp. St. §§ 8604e, 8604ee, 8604gg). Defendant did deliver the goods to one who was not the holder of the bill of lading, and hence is liable. In

162 LA.—8

fact, it is conceded that defendant is liable for something, the only question being for how much.

[3] The rule is that the measure of damages for a conversion by the carrier of goods intrusted to it for transportation is the value of the goods at the time and place of the conversion. 10 C. J. p. 277, par. 396; 4 R. C. L. p. 929, par. 386. From this amount the freight charges on the shipment should be deducted, for the payment of such charges is necessary to enable the shipper or holder of the bill to obtain possession of the shipment, and the shipper or holder should not be permitted to enrich himself at the expense of the carrier. See Hutchinson on Carriers, § 1375; 10 C. J. p. 277, par. 396.

[4] The case at bar, however, involves the further question, whether or not a carrier after having delivered a shipment, intrusted to it, to a third person, not entitled to receive the shipment, thereby placing it beyond the power of the shipper, or the holder of the bill of lading, to show the condition of the goods, at the time of their conversion, may, when sued for their value, offer evidence tending to show that the goods had deteriorated, in order to reduce the amount that otherwise might be recovered, based upon an examination made after the date of conversion. In our view, it is not clear that the carrier, under such circumstances, may offer such evidence for such purpose. Granting, however, that it may, and probably it may, still it appears clear to us that the evidence, so offered, should establish clearly and convincingly that the goods had deteriorated in order to warrant a reduction of the amount below that which should be allowed had the goods not deteriorated, and must, in other respects, clearly warrant the deduction. This is so, due to the disadvantageous position, in such a case, in which the shipper or holder of the bill is placed by the carrier in rebutting the evidence offered by the latter, for the purpose

of showing that the goods, though properly cared for, had deteriorated at the time of the conversion. Were the rule otherwise, the shipper or holder of the bill would frequently be at the mercy of the carrier.

[5] The evidence offered by plaintiff makes out a prima facie case that the milk was in good condition when it left the factory, and should have been in such condition when it was delivered by defendant to Goodman & Beer and a bond taken for it. The evidence offered to show that the milk had deteriorated or spoiled, as observed by the trial judge, does not satisfactorily establish that it had. No disinterested person examined the milk, and gave evidence concerning its condition. Defendant, itself, in so far as the record discloses, caused no examination to be made of it. Groetch, to whom the milk was sold, was not put upon the witness stand, nor summoned for the trial. The only examinations made were by an official and an employee of Goodman & Beer, which concern, as we have seen, is directly interested in the result of this case. These examinations, as observed by the trial court, were not thorough. The only remaining evidence relied upon by defendant to show the condition of the milk is evidence given by a chemist. This witness made no examination of the milk. His evidence rests, in part, upon the description of the milk, as given by the official and the employee who made examinations of it, and the remainder of his evidence consists of a criticism of the manner in which the milk was manufactured. In so far as his evidence rests upon the description of the milk, as testified to by others, it is entitled to no greater weight than theirs, and in so far as it consists of a criticism of the method in which the milk was manufactured, it may be observed that the witness is not experienced in the methods of manufacturing condensed milk.

[6] Our conclusion is that defendant has not satisfactorily established that the milk had deteriorated, and hence was not worth what it otherwise would have been, and especially has it not shown this clearly and convincingly, which, under the circumstances of the case, it should have done, to say the least.

[7] Defendant also urges that plaintiff was not affected by the misdelivery of the milk until it made such demand for the milk as would authorize and require the carrier to deliver it, and that no effort was made by plaintiff to obtain it from defendant until many months after its misdelivery. However, we think that plaintiff was affected the moment defendant placed it beyond its power to deliver the goods to it. At that moment plaintiff's cause of action arose. It could have served no useful purpose to have demanded delivery after defendant had placed it beyond its power to make delivery. Such a demand would have been vain.

[8] The trial court rendered judgment for plaintiff as prayed for; that is, for $3,254.02, which was the market value of the goods at the time of the conversion less the freight charges. The court also allowed legal interest on this amount from February 24, 1923, until paid. The judgment is correct, save that interest should have been allowed from the date of conversion, which was March 22, 1923.

For the reasons assigned, the judgment appealed from is amended so as to make the interest run from March 22, 1923, instead of February 24, 1923, and, as thus amended, it is affirmed; appellant to pay the costs of appeal.