AMERICAN CYANAMID COMPANY,
Plaintiff–Appellee,

v.

ELECTRICAL INDUSTRIES, INC.,
Defendant–Appellant.

No. 80–3241
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit A

Nov. 21, 1980.

Benjamin R. Slater, Jr., William J. Hamlin, New Orleans, La., for defendant–appellant.

Don M. Richard, New Orleans, La., for plaintiff–appellee.

Before BROWN, POLITZ and TATE, Circuit Judges.

TATE, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the Eastern District of Louisiana awarding damages and interest in favor of the plaintiff–appellee American Cyanamid Company (Cyanamid) and against the defendant–appellant Electrical Industries, Inc. *in solido* with the defendant Dominick C. Carrone, Jr., d/b/a Nical Electric Co. Our review of the record on appeal reveals no clear error in the district court's findings of fact. Because we

find the law of Louisiana was correctly applied on those facts, the judgment of the district court is affirmed.

## FACTS

New Orleans Armature Works (Armature) is a division of the defendant–appellant Electrical Industries, Inc.[1] For some time, Armature had performed services—primarily the repair of electric motors—for the plaintiff–appellee in this action, American Cyanamid Company. In 1969, one Hollis Davis, a full–time sales representative employed by Armature, entered into an agreement with Dominick C. Carrone Jr., a full–time employee of Cyanamid, under which Armature was to pay Carrone as a subcontractor on the repair work done by Armature for Cyanamid. Both the President and the General Manager of Armature were aware of this agreement.

Pursuant to the arrangement, when Armature would receive repair work under a Cyanamid purchase order number, Carrone would contact Armature's General Manager and instruct him to include a certain sum in Armature's invoice to Cyanamid. This sum would represent the amount paid by Armature to Carrone for his "services." Armature's General Manager would then record this information on an Armature interoffice memorandum and on a Nical Electric Co. invoice addressed to Armature. These Nical invoices were kept on Armature's premises. Subsequently, Armature would issue a check payable to Nical which was held by Armature until picked up by Carrone. The amounts paid over to Carrone by Armature were included in Armature's invoices to Cyanamid and were paid by Cyanamid to Armature. Armature's invoices to Cyanamid did not reflect any payments to Nical or Carrone.

Cyanamid had no knowledge of the arrangement between Armature and Carrone. This arrangement continued for some ten years before it was disclosed to Cyanamid.

---

1. Throughout this opinion we make no distinction between Armature and Electrical Industries, Inc. Both or either may be referred to as Armature.

The district court found that Carrone had performed no real services for Armature in return for the money he received—whatever work he did, he did as the employee of Cyanamid and was fully compensated therefor by Cyanamid.

Within a year of discovering the agreement, Cyanamid filed suit in diversity against both Carrone and Electrical Industries, Inc., to recover the amounts received by Carrone under the arrangement described above—a total of $145,284.66. The United States District Court for the Eastern District of Louisiana awarded judgment in favor of Cyanamid against both Carrone and Electrical Industries, Inc. *in solido* for that amount, plus seven percent legal interest,[2] from the date of each individual payment by Cyanamid.

From that judgment Electrical Industries, Inc. brings this appeal, urging the following points of error: (1) That the district court erred in finding fraud on the part of Electrical Industries, Inc. and in holding it solidarily liable with Carrone; (2) that even if Electrical Industries, Inc. had been correctly held liable, the district court erred in awarding damages to Cyanamid; (3) that the district court erred in rejecting the assertion of Electrical Industries, Inc. that Cyanamid's right to recover all but some $16,775.00 of the total amount sought was barred by the one–year prescriptive period for tort actions; and (4) that the district court erred in awarding legal interest accruing before the date of the judicial demand.

I.

The appellant argues on this appeal that the evidence adduced at trial was insufficient as a matter of law to support the imposition of liability based on fraud.

Accepting at face value the appellant's characterization of the holding of the district court,[3] we disagree.

In its examination of Armature's role in the fraud perpetrated on American Cyanamid, the district court made the following findings of fact:

(1) In 1969, Armature agreed to pay Dominick Carrone, a full–time employee of American Cyanamid, as a subcontractor on repair work performed by Armature under contract to Cyanamid.

(2) Armature was fully aware of Carrone's employment with Cyanamid.

(3) Both the President and the General Manager of Armature were aware of the agreement.

(4) Pursuant to that agreement, Carrone provided dollar amounts to Armature, which Armature then included on its invoices to Cyanamid; Armature prepared Carrone's invoices to Armature, and stored those invoices on Armature's premises.

(5) These extra amounts were always in "round" figures.

(6) Armature issued checks payable to Nical Electric Co. (a sole proprietorship owned by Carrone) that were subsequently personally picked up by Carrone.

(7) Armature's billings to Cyanamid did not reflect any payments to Carrone, and throughout the ten–year duration of the agreement, Armature never revealed its existence to Cyanamid.

(8) No services were ever performed by Carrone as a subcontractor for Armature; any work performed by Carrone in connection with Armature's contracts with Cyanamid was performed as part of Carrone's duties, and for the compensation received

2. The interest so awarded was by virtue of La.Civ.Code art. 1938 (1970): "All debts shall bear interest at the rate of seven per centum per annum from the time they become due, unless otherwise stipulated."

3. A close reading of the district court's opinion reveals no express holding that the appellant was individually liable for fraud. In strictest terms, the court below held that, under the particular "highly suspicious" facts and circumstances of this case, Armature's failure to inquire into defendant Carrone's authorization to perform services at Cyanamid's plant, and to be paid therefor through extra billing by the appellant to Cyanamid, constituted a basis for recovery under Louisiana Civil Code article 2324. In view of our holding in Part I of this opinion, we need not dwell on this distinction.

by Carrone, as a full-time employee of Cyanamid.

(9) Because of his position with American Cyanamid, Carrone was able to influence the amount of work received by Armature under contract from Cyanamid.

(10) Armature did in fact receive the bulk of the repair work contracts let out by Cyanamid during the existence of its agreement with Carrone.

On these findings, the district court concluded that Armature's "acceptance of this arrangement made it Carrone's partner in his breach of trust, liable to Cyanamid *in solido* with Carrone."

■ Our review of the record reveals ample evidentiary support for these findings, and we conclude, therefore, that they are not clearly erroneous. Indeed, the appellant does not appear to challenge them as such. Rather, the appellant argues that the findings of the district court do not constitute the "clear and convincing" evidence of fraud that is required by the jurisprudence of Louisiana. *Hall v. Arkansas Louisiana Gas Co.*, 368 So.2d 984, 993 (La. 1979); *Equilease Corp. v. Smith Intern, Inc.*, 588 F.2d 919, 923 n.4 (5th Cir. 1979). We disagree.

■ The "clear and convincing" standard *of persuasion adopted by the courts of Louisiana in cases of fraud cannot be seen as requiring conclusive proof.* Fraud being what it is, it must sometimes be inferred from proof of highly suspicious conditions or events. *Vanguard Finance, Inc. v. Smith*, 256 So.2d 662, 664 (La.App.), *writ ref'd*, 260 La. 1205, 258 So.2d 553 (1972) ("Under the facts found by the court of appeal, we find no error of law."). As Justice Sanders has noted:

> The law requires that certain facts in civil cases be established by clear and convincing evidence .... Like the preponderance standard, the "clear and convincing" evidence standard seems to focus on the objective quality of the evidence, rather than on the degree of belief. Quite clearly the standard requires a higher degree of proof than a preponderance of the evidence. This standard of proof is an intermediate one between a preponderance and proof beyond a reasonable doubt. Here again the standard can be more easily understood if converted into terms of probability. The standard requires that the existence of disputed facts be highly probable, that is, much more probable than its non-existence.

Sanders, *The Anatomy of Proof in Civil Actions*, 28 La.L.Rev. 297, 304 (1968). The findings of the district court meet that standard.

■ Under article 2324 of the Louisiana Civil Code, one who assists or encourages another in the commission of an unlawful act is answerable *in solido* with that person for the damage thereby caused. La.Civ. Code art. 2324 (amended by 1979 La. Acts, No. 431 § 1) *See Equilease Corp. v. Smith Intern, Inc.*, 588 F.2d at 923.

For these reasons we find the imposition of liability upon the appellant in the court below to be free from error.

II.

■ The appellant next argues that the award of damages to Cyanamid was erroneous. The gist of this argument seems to be that, even if a fraud were perpetrated upon Cyanamid, Cyanamid was not damaged thereby since it could not have obtained the work elsewhere at a cheaper price. We find no merit in this contention.

The district court expressly found that Dominick Carrone performed no services for the monies he received through Armature from Cyanamid, that any work done by Carrone in connection with the repair contracts of Armature was done by Carrone within the scope of his employment with Cyanamid, and that Carrone was fully compensated for that work by the salary he received from Cyanamid. By virtue of the arrangement struck by Armature and Carrone, Cyanamid was fraudulently induced to pay Carrone yet a second time for that same work. That is damage.

For this reason, we find no error in the award of damages in the court below.

### III.

The appellant next argues that the district court erred in applying the ancient civil law doctrine of *contra non valentem agere nulla currit praescriptio* to avoid the one–year prescriptive period of Louisiana Civil Code article 3536.

■ The *contra non valentem* principle has long been recognized by the courts of Louisiana as a limited exception to strict statutory prescriptive periods. *See Corsey v. State Department of Corrections*, 375 So.2d 1319, 1321 & n.4 (La. 1979). In *Nathan v. Carter*, 372 So.2d 560, 562 (La. 1979), the Supreme Court of Louisiana recognized the applicability of the *contra non valentem* principle to situations in which the defendant had concealed the fact of the offense or had otherwise (through concealment, fraud, misrepresentation or other ill practices) prevented or hindered the plaintiff's assertion of his cause of action. In *Corsey*, that court extended the principle to cover situations in which the same wrongful conduct of the defendant that gave rise to the cause of action also made it impossible for the plaintiff to avail himself of his legal remedy. *Corsey v. State Department of Corrections*, 375 So.2d at 1323–24. In all these situations, however, it is recognized that the *contra non valentem* principle will be of no avail to a plaintiff whose delay in filing suit has resulted from his own willfulness or neglect. *Cartwright v. Chrysler*, 255 La. 598, 232 So.2d 285, 287 (1970).

Thus, unless (as the appellant here contends) Cyanamid's willfulness or negligence caused its delay in bringing this action, the *contra non valentem* principle will apply to except it from the barrier interposed by the statutory prescriptive period.

■ The district court expressly found that Cyanamid was kept unaware of the payments to Carrone as a result of concealment by Carrone and Armature, and not as a result of its own willfulness or negligence. Our review of the record reveals no clear error in that finding. The record shows that the Armature's invoices to Cyanamid did not reflect any payments to Carrone as a subcontractor; that Carrone's invoices to

Armature were never attached to the appellant's invoices to Cyanamid; that in fulfilling Cyanamid's requests for price lists for repairs, materials, and labor, Armature did not include the payments to Carrone; that although employees of Armature discussed information contained on Carrone's invoices to it with Cyanamid personnel other than Carrone, no mention was ever made of the identity or the existence of the "subcontractor" Carrone; and that over the course of ten years, and in the face of circumstances strongly indicating the probability that Carrone was defrauding his employer, Armature never once let slip any intimation of the arrangement it had struck with Dominick Carrone. These facts amply support the district court's conclusion.

Had Cyanamid been aware of any fact or circumstance sufficient to alert a reasonably prudent businessman to the possibility that a fraud was being perpetrated, and had it failed thereafter to take some reasonable steps to discover the fraud, Armature's contention in this regard might have some merit. *See, e. g., Dugas v. Powell*, 207 La. 316, 21 So.2d 366, 373 (1945). But that is not the case. The district court expressly found that Cyanamid acted reasonably in this regard. It would indeed be contrary to reason to hold that the selfsame fraud which rendered the appellant liable to the plaintiff could subsequently operate to allow the appellant to successfully interpose a plea of prescription.

For this reason, we find no error in the district court's application of the *contra non valentem* principle to this case.

### IV.

■ The appellant argues finally that the district court erred in allowing legal interest to run from the end of the calendar years within which each payment was made, rather than from the date of the judicial demand. The appellant relies on La.R.S. 13:4203 (1950), which provides:

> Legal interest shall attach from date of judicial demand, on all judgments, sounding in damages "ex delicto", which may be rendered by any of the courts.

Since the present action "sounds in tort" for conversion, the appellant argues, the above quoted statute precludes the interest award granted by the court below.[4]

■ The general rule in Louisiana is that legal interest runs from the due date of the obligation in question. La.Civ.Code art. 1938. Section 4203 represents an exception to that general rule, calling for a more restrictive approach to legal interest where the damages arise *ex delicto.* Nevertheless, a review of the history of that section shows that its primary purpose was to liberalize, and not to restrict, the existing judicial approach to legal interest in tort cases.

Prior to the enactment of Section 4203 in 1916, 1916 La. Acts, No. 206, the courts of Louisiana took an even more restrictive approach legal interest in tort cases, holding generally that such interest would run only from the date of the judgment. Comment, *The Running of Legal Interest in Louisiana,* 6 Tul.L.Rev. 614, 615 (1932). This restrictive approach was mandated by article 554 of the Louisiana Code of Practice of 1825, which prohibited the awarding of interest on unliquidated claims. Comment, 6 Tul.L. Rev. at 615. Despite the repeal of article 554 in 1839, and its replacement with a provision echoing the general rule of La. Civ.Code art. 1938, *see* 1839 La. Acts, No. 53, courts of Louisiana continued to apply the "unliquidated claims" rule to restrict the running of legal interest in tort cases to the date of the judgment. Comment, 6 Tul.L.Rev. at 615. It should be noted, however, that the same "unliquidated claims" rule that mandated the restriction of legal interest in tort cases to the date of the judgment, mandated as well an exception to that rule: Where the damages in tort were shown to be clearly liquidated, as in conversion cases, interest was allowed to run from the date of the injury rather than from the date of the judgment. Comment, 6 Tul.L.Rev. at 615; *e. g., New Orleans Draining Co. v. DeLizardi,* 2 La.Ann. 281, 290 (1847).

When Section 4203 was enacted in 1916, the legislature of Louisiana accomplished what it had failed to accomplish with the repeal of the "unliquidated claims" rule in 1839: it effectively liberalized the judicial approach to legal interest in tort cases, first, by creating a substantive right to such interest in tort plaintiffs, *e. g., Merchant v. Montgomery Ward & Co.,* 83 So.2d 920, 925–26 (La.App. 1st Cir. 1956), and second, by requiring that such interest run from the

4. Both parties characterize this action as one in tort for conversion. It would be more accurate, perhaps, to characterize it as an action for the fraudulent imposition of pecuniary loss. *See* 1 T. Street, the Foundations of Legal Liability: Theory and Principles of Tort 374–77 (1906). Be that as it may, the distinction has no real impact upon our resolution of the question of legal interest in this action. Under either characterization, what is involved is the divestment of a clearly liquidated amount from the true owner by means of willfully fraudulent conduct. Since the "exception" we identify in the text of this portion of the opinion turns on the liquidated or nonliquidated nature of the damages incurred, the distinction is one that makes no difference. The only difference between this case and the conversion cases relied upon in the text of the opinion, *infra,* is that the "property" here fraudulently "converted" is money rather than goods. We perceive in that distinction no rational basis for applying a different rule as to the awarding of legal interest.

We should note, however, that the Louisiana Civil Code affords alternatives to the "conversion" characterization of this issue that would avoid the operation of Section 4203 altogether.

Thus, we might note that *Carrone's* liability in the court below was predicated upon the breach of his fiduciary duty to his employer as delineated in the code articles on *mandate,* not tort. On that basis, we might conclude that the damages awarded are not delictual at all, and thus are not governed by Section 4203. That Armature's participation in that breach· is found under the aegis of article 2324—dealing with delicts—could be said to be insufficient to characterize the action as delictual within the intendment of Section 4203. *See Davis v. Le-Blanc,* 149 So.2d 252 (La.App. 1963). Furthermore, this action could be seen as one in quasi-contract for the recovery of the payment of a thing not due. *See* La.Civ.Code art. 2301. As such, it would be governed by Civil Code article 2311 ("If there be any want of good faith on the part of him who has received, he is bound to restore not only the capital, but also the interest on the proceeds from the day of the payment."), and not by Section 4203.

Our point here is this: even under the characterization most favorable to Armature, the district court's award of legal interest running from before the judicial demand was free from error.

date of the judicial demand rather than from the date of the judgment, *Ventrilla v. Tortorice*, 160 La. 516, 107 So. 390, 392–93 (1926). But the enactment of the liberalizing rule of Section 4203 had no effect upon the judicial treatment of legal interest in cases of liquidated delictual damages—the courts of Louisiana continued to award interest in such cases running from the date of the injury, and not merely from the date of the judgment, even after the passage of that section.[5] *See, e. g., Hitt v. Herndon*, 166 La. 497, 117 So. 568, 572 (1928); *Orange National Bank v. Southern Pacific Co.*, 162 La. 223, 110 So. 329, 331 (1926); *Disimone v. Bryant*, 120 So.2d 113, 114 (Orl.La.App. 1960); *Bryson v. Bates–Crumley Chevrolet Co.*, 171 So. 605, 606 (La.App. 2d Cir. 1937).

This lends strong support to our original assessment of the historical objectives of Section 4203. That provision did not alter the judicial treatment of legal interest in the conversion cases cited above because it was not meant to. Its purpose was to *liberalize* the judicial approach to legal interest in tort cases, *not* to impose new restrictions where none had existed before.

This is just such a case.

The narrow question before us here is whether the judgment of the court below is one that the courts of Louisiana would view as "sounding in damages 'ex delicto' " within the intendment of Section 4203. Although this judgment is "based primarily on tort liability and historically [is] regarded as a rising *ex delicto*," *Davis v. LeBlanc*, 149 So.2d 252, 255 (La.App. 1963), it does not fall within that class of judgments—those subject to the traditional restrictions on the awarding of legal interest—that Section 4203 was designed to affect. *Cf. Davis v. LeBlanc, supra.*

For this reason, and because its application to this case would defeat the historical objectives for which it was enacted, we find that La.R.S. 13:4203 imposes no restrictions upon the award of legal interest in the court below.

## CONCLUSION

Having found no error in the judgment of the district court, the judgment is AFFIRMED.

---

**5.** The appellant argues that, to the contrary, the courts of Louisiana *did* indeed yield to the literal language of Section 4203, even in cases of willful conversion. In support of this contention we are cited to three Louisiana cases: *Seibert v. Conservation Comm'n of Louisiana*, 181 La. 237, 159 So. 375 (1935); *Hancock v. Alexander*, 344 So.2d 21 (La.App. 3d Cir. 1977); *Lafleur v. Sylvester*, 135 So.2d 91 (La.App. 3d Cir. 1961).

We find those cases unpersuasive. The single Louisiana Supreme Court case, *Seibert, supra*, involved neither a willful or intentional conversion nor an interpretation of Section 4203. In *Hancock, supra*, the intermediate Louisiana appeals court focused upon the trial court's failure to award legal interest at all, citing Section 4203 for the proposition that such interest was due. The court did not directly address the question of when such interest should begin to run, and appears to have *assumed* (from the face of Section 4203) that the starting point was the date of the judicial demand. In *Lafleur, supra*, the same intermediate appeals court that decided *Hancock* made the following statement:

The District Judge allowed interest on the money judgment from January 12, 1961. The trespass for which the award was granted occurred January 11, 1961, and the con-

version on the same date. *In conversion cases, interest has usually been awarded from the date of the conversion. But in this case the damages awarded are ex delicto, hence the interest must attach from judicial demand under LSA · R.S. 13:4203 . . . .*

*Lafleur v. Sylvester*, 135 So.2d at 104 (italics ours). As the italicized language clearly shows, the *Lafleur* court expressly recognized the existence of the very exception the appellant here seeks to defeat, and merely found that the facts of the case before it removed that case from the operative scope of that exception. The *Lafleur* facts do, indeed, distinguish it—both from the cases we rely upon in the text, *supra*, and from the case before us on this appeal. Perhaps the most telling distinction is that the tortious acts of the defendant in *Lafleur* had caused no pecuniary loss at all to the plaintiff. *Lafleur v. Sylvester*, 135 So.2d at 102 · 03. In the absence of any proven pecuniary loss caused by the conversion, the *Lafleur* court quite rightly found the awarding of legal interest from the date of the conversion to be inappropriate. But the *Lafleur* court (also quite rightly) recognized the unusual nature of those circumstances, and expressly alluded to the *usual* rule, which, implicitly, would apply in the absence of such factual peculiarities.